715 A.2d 1117

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Leslie E. MENDENHALL, Jr. Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 17, 1997.

Decided July 29, 1998.

---

Joseph A. Massa, Jr., Marcia M. Ziki, Warren, for Com.

James C. Blackman, Warren, for L.E. Mendenhall, Jr.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION

NIGRO, Justice.

The issue before this Court is whether the lower courts erred in granting the motion to suppress of the Appellee, Leslie Mendenhall. The trial court found that Appellee was subjected to an investigative detention by Officer Roofner, an out-of-jurisdiction police officer, warranting suppression of the results of blood alcohol testing and statements taken subsequent to his arrest. The Superior Court affirmed. For the reasons which follow, we conclude the lower Courts erred, and therefore, we reverse.

Our standard of review of an appeal from a suppression ruling is limited to determining whether the court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are erroneous. *Commonwealth v. Morgan*, 517 Pa. 93, 96, 534 A.2d 1054, 1056 (1987). Where it is the Commonwealth who is appealing the decision of the suppression court, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution, as read in the context of the record as a whole, that remains uncontradicted. *Commonwealth v. DeWitt*, 530 Pa. 299, 301, 608 A.2d 1030, 1031 (1992).

The facts of record, viewed in light of the above mentioned standard, are as follows: On the evening of April 7, 1995, Sergeant Christopher Roofner of the Tidoute Borough Police was in his office when he was approached by a concerned citizen who said that an accident occurred on Route 337. Officer Roofner, knowing that the accident was outside of his jurisdiction, decided to go to the accident scene to see if he could render first-aid or other assistance.

When Officer Roofner arrived, he observed a red pickup truck against a utility pole. The truck had been travelling up the hill and had gone off the left side of the road. He saw

Appellee standing along side the truck, and asked if he was the operator of the vehicle. Appellee admitted to being the truck's operator, and declined the Officer's offer of first-aid.

Officer Roofner observed severe damage, including antifreeze leaking from the vehicle, and believed that the vehicle could not be driven from the scene. The Officer then told Appellee that since the accident was reportable, he had called a tow-truck and the State Police, and Appellee would have to stay until the State Police arrived. While Appellee and Officer Roofner awaited the State Police, Appellee entered his truck and attempted to place several different keys into the ignition.[1] N.T. 8/3/95, p. 8. Officer Roofner did not attempt to restrain Appellee from trying to start his vehicle or otherwise restrict Appellee's movements in any other way. The Officer also saw Appellee fall twice. Appellee testified that he believed Officer Roofner had the authority to tell him to stay at the accident scene to wait for the State Police.

When the State Trooper arrived, he also observed what he believed to be antifreeze coming from under the vehicle and also felt the vehicle was not drivable. The Trooper testified Appellee was having a hard time standing and was visibly intoxicated. He placed Appellee under arrest and took him to Warren General Hospital. After administering Miranda, Implied Consent, and O'Connell warnings, the Appellee submitted to blood testing which revealed a Blood Alcohol Content (BAC) of 0.28%.

On August 23, 1995, the suppression court granted Appellee's motion and suppressed the BAC test results and statements made by Appellee at the time of his arrest[2] as the tainted fruit of an illegal out-of-jurisdiction detention. On July 23, 1996, the Superior Court, by Memorandum Order and Opinion affirmed the trial court, finding that Officer Roofner

---

**1.** This testimony by Officer Roofner was not included in the suppression court's findings of fact. However, as the testimony is uncontradicted, we may consider it in evaluating the legal conclusion drawn by the suppression court. See *DeWitt*, 530 Pa. at 301, 608 A.2d at 1031.

**2.** Appellee told his arresting officer "I gave you a hard time Trooper Moore, you did a good job and I know I had too much to drink tonight." N.T. 8/3/1995, p. 23.

did not have the authority to detain Appellee. The Commonwealth filed a Petition for Allowance of Appeal which this Court granted to determine whether a detention occurred, and if so, whether Officer Roofner lacked jurisdiction.

■ Preliminarily, we must determine whether the record supports the suppression court's legal conclusion that Appellee was subjected to an investigative detention. If not, Officer Roofner's jurisdictional authority pursuant to the Statewide Municipal Police Jurisdiction Act (Act), 42 Pa.C.S. § 8953, is not implicated, and suppression of the after-acquired evidence is not warranted.

This Court has recognized three categories of interaction between citizens and the police:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. See *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. See *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Finally, an arrest or "custodial detention" must be supported by probable cause. See *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Commonwealth v. Rodriquez*, 532 Pa. 62, 614 A.2d 1378 (1992).

*Commonwealth v. Ellis*, 541 Pa. 285, 293–94, 662 A.2d 1043, 1047–48 (1995).

In *Commonwealth v. Jones*, 474 Pa. 364, 372, 378 A.2d 835, 839 (1977), in addressing whether an investigative "stop" occurred, the Court viewed all circumstances evidencing a show of authority or exercise of force, including the demeanor of the police officer, the manner of expression used by the

officer in addressing the citizen, and the content of the interrogatories or statements. The Court found that the pivotal inquiry is whether, considering all the facts and circumstances evidencing the exercise of force, a reasonable man would have thought he was being restrained. *Id.* at 373, 378 A.2d at 840. *See also United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)("a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave"); *Commonwealth v. Matos,* 543 Pa. 449, 458, 672 A.2d 769, 774 (1996)("the *Jones/Mendenhall* standard has since been consistently followed in Pennsylvania in determining whether the conduct of the police amounts to a seizure or whether there is simply a mere encounter between citizen and police officer.").

In the instant case, the Commonwealth claims that the nature of the stop between Officer Roofner and Appellee amounted to nothing more then a "mere encounter." They offer the non-coercive nature of the encounter, and the freedom Appellee possessed to move about the accident site as evidence that Appellee was under no compulsion to remain at the scene. The Commonwealth submits that the Officer did not ask for Appellee's driver's license, registration, or conduct any formal investigation. Rather, they aver the record indicates that the pair merely discussed Appellee's home state of Alaska until the State Police arrived. Further, while Officer Roofner and Appellee conversed before the state police arrived, although Appellee entered his vehicle and attempted to place his keys in the ignition, Officer Roofner did not attempt in any way to restrict him. We find the Commonwealth's argument persuasive.

The line between a mere encounter and an investigative detention cannot be precisely defined "because of the myriad of daily situations in which policemen and citizens confront each other on the street." *Jones,* 474 Pa. at 371, 378 A.2d at 839 (quoting *Terry v. Ohio,* 392 U.S. 1, 32, 88 S.Ct. 1868, 1885, 20 L.Ed.2d 889 (1968)). However, nothing in the record, aside

from Officer Roofner telling Appellee to "stick around," evidenced an exercise of force or demonstration of authority that would indicate to a reasonable person that they were not free to leave. Rather, the fact that Appellee freely moved in and out of his vehicle strongly suggests that a reasonable person in Appellee's shoes would feel free to leave.

Additionally, at the suppression hearing, Officer Roofner clarified why he told Appellee to "stick around:"

Q. Did you make any statement to him as to what his responsibilities or obligations were considering the nature of the accident?

A. I advised him it was a reportable accident and he needed to stay there because we had a state car coming down to take the investigation report.

N.T. at 9. The responsibility of a driver involved in an accident to report that accident to the police, and remain at the scene pending the police investigation is contained in 75 Pa.C.S. § 3746, which states in pertinent part:

§ 3746 **Immediate notice of accident to police department**

(a) **General Rule.**— The driver of a vehicle involved in an accident shall immediately by the quickest means of communication give notice to the nearest office of a duly authorized police department if the accident involves:

(1) injury to or death of any person; or

(2) damage to any vehicle involved to the extent that it cannot be driven under its own power in its customary manner without further damage or hazard to the vehicle, other traffic elements, or the roadway, and therefore requires towing.

(c) **Investigation by police officer.**— Every accident reported to a police department required in this section shall be investigated by a police officer who shall provide each driver a signed statement that the accident was reported.

75 Pa.C.S. § 3746(a) and (c).

When Officer Roofner arrived at the scene, he observed that Appellee's truck was leaking fluid, had a smashed grill, and could not be driven from the scene. Since the Officer believed

the vehicle required towing, and indeed, had already called a tow-truck, advising Appellee that the accident was reportable and he needed to "stick around," only confirmed Appellee's duty pursuant to Section 3746, to wait for an investigating officer from the State Police. Thus, in this unique context, Officer Roofner's notifying Appellee of his affirmative duties following the accident does not, in and of itself, turn the encounter into an investigative detention. To hold otherwise would require this Court to examine only the words of the exchange, while ignoring the context in which they were spoken. This, we cannot do. Rather, this Court must scrutinize the totality of the circumstances surrounding the encounter. *Jones*, 474 Pa. at 372, 378 A.2d at 839.

Based on the facts of record as discussed, the interaction between Officer Roofner and Appellee cannot be characterized as an investigative detention.[3] Thus, as Appellee was not subjected to an out-of-jurisdiction detention, we reverse the order of the Superior Court, and conclude that suppression of the BAC test results and Appellee's statements is unwarranted.

ZAPPALA, J., files a Dissenting Opinion.

ZAPPALA, Justice, dissenting.

Under the circumstances of this particular case, I must respectfully dissent. At the conclusion of the suppression

---

**3.** Instantly, the Superior Court found Officer Roofner detained Appellee, and affirmed the suppression based on *Commonwealth v. Price*, 406 Pa.Super. 166, 593 A.2d 1288 (1991), *aff'd* 543 Pa. 403, 672 A.2d 280 (1996). In *Price*, an FBI agent stopped the defendant's vehicle after witnessing a motor vehicle violation. The agent told the defendant not to move and to remain seated in his vehicle. *Id.* at 405, 672 A.2d at 281. This Court found the agent's stop of the defendant was illegal because the agent was outside of his lawful jurisdiction. Thus, the subsequent arrest by the local police was tainted, warranting suppression of all evidence obtained as a result of the illegal stop. *Id.* at 413, 672 A.2d at 285. As indicated in the body of this Opinion, Officer Roofner did not initially stop Appellee, nor did he in any way attempt to restrain Appellee. Therefore, *Price* is factually distinguishable. Moreover, the Statewide Municipal Police Jurisdiction Act, 42 Pa.C.S. § 8953 applies to municipal police officers. *Price* involved an FBI agent. Therefore, *Price* is legally inapposite and does not implicate 42 Pa.C.S. § 8953.

hearing, the Honorable Paul H. Millin, P.J., concluded that Sergeant Christopher Roofner of the Tidioute Borough Police Department, dressed in full police uniform and arriving in a marked police vehicle at the scene of an accident outside of his jurisdiction, was acting under "color of law" when he subjected Appellee, Leslie E. Mendenhall, to an investigative detention.

The majority has failed to accord proper deference to the suppression court's decision, which came after weighing the testimony of Sergeant Roofner, Pennsylvania State Police Trooper Daniel Moore and Appellee. I find the factual findings of the suppression court are supported by the record, and the legal conclusions drawn therefrom are correct. Even though the majority may disagree with the findings, it is not our prerogative to come to a different conclusion unless there has been a clear error of law. None having been shown, I would therefore affirm the order of the Superior Court.