J-S01006-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ALEXANDER SCOTT BOLYNN, | : | |
| | : | |
| Appellant | : | No. 87 WDA 2014 |

Appeal from the Judgment of Sentence entered on November 26, 2013
in the Court of Common Pleas of Erie County,
Criminal Division, No. CP-25-CR-0000863-2013

BEFORE: GANTMAN, P.J., JENKINS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED FEBRUARY 19, 2015**

Alexander Scott Bolynn ("Bolynn") appeals from the judgment of sentence imposed following his convictions of Robbery, Simple Assault, Terroristic Threats, Receiving Stolen Property, False Identification, Intimidation of Witnesses or Victims, and Possession of Drug Paraphernalia.[1] We affirm the convictions, vacate the sentence, and remand for re-sentencing.

In March 2013, the victim, Gabrielle Taylor ("Taylor"), reported that two white males entered her apartment with towels covering their faces and pointed a gun at her. Taylor reported that the two men took several items from her apartment, including her laptop, wallet, cell phone, and jewelry. Erie Police Corporal Geoffrey Filutze ("Corporal Filutze") was on duty at the

---

[1] 18 Pa.C.S.A. §§ 3701, 2701, 2706, 3925, 4914, 4952; 35 P.S. § 780-113(a)(32).

time of the robbery, and was able to reach Taylor's apartment within one minute of being dispatched. Patrolman Steve DeLuca ("Patrolman DeLuca") was also on duty, and responded to the report. While canvassing the area surrounding Taylor's apartment, Patrolman DeLuca saw Bolynn, who matched Taylor's description of one of the perpetrators, appear from between two houses about one block away. Patrolman DeLuca stopped his police car next to Bolynn, and thereafter approached Bolynn on the sidewalk. While talking to Bolynn, Patrolman DeLuca received an update from Corporal Filutze that one of the suspects was wearing a blue hat with the letter "P" printed on it. Patrolman DeLuca observed that Bolynn was wearing a hat matching that description. Corporal Filutze escorted Taylor to Patrolman DeLuca's location, where she identified Bolynn as one of the robbers. Thereafter, Bolynn was arrested, and subsequently charged with the above-mentioned offenses.

Following a jury trial, Bolynn was convicted of the above-mentioned crimes. The trial court sentenced Bolynn to 7 years, 2 months to 14 years, 4 months in prison. Bolynn filed a Post-Sentence Motion, which the trial court denied. Bolynn filed a timely Notice of Appeal and a timely court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement of Matters Complained of on Appeal.

On appeal, Bolynn raises the following questions for our review:

I. Whether the [trial court] erred when it denied [Bolynn's] Omnibus Pre-trial Motions and thereby ruled that [Bolynn's]

constitutional rights had not been violated by the City of Erie Police, specifically that the stop and/or search of [Bolynn] was constitutional (*i.e.*, that the City of Erie Police had reasonable suspicion and/or probable cause)[?]

II. Whether the identification of [Bolynn] as the alleged perpetrator was tainted[,] as [Bolynn's appearance] barely matched the description of the alleged perpetrators given to law enforcement by [Taylor] and/or her neighbor on the night in question[?]

III. Whether the verdict goes against the sufficiency of the evidence because the Commonwealth's primary witnesses, [Taylor] and her neighbor, contradicted themselves [on] multiple occasions on factual matters[,] and that those factual matters were a substantial deviation from what the Commonwealth alleged happened, and/or therefore the Commonwealth cannot meet the beyond a reasonable doubt burden of proof; and specifically: at Counts 1 (Robbery), 2 (Simple Assault), 3 (Terroristic Threats), and 4 (Receiving Stolen Property), the Commonwealth could not and/or did not prove that [Bolynn] and/or another perpetrator assaulted, restrained and/or threatened the victim in any way[;] in fact[,] the evidence showed that another perpetrator or perpetrators may have committed the instant offenses, and not [Bolynn?]

IV. [Whether] the verdict goes against the weight of the evidence because the Commonwealth's primary witnesses, [Taylor] and a neighbor, contradicted themselves [on] multiple occasions on factual matters[,] and that those factual matters were a substantial deviation from what the Commonwealth alleged happened, and therefore the Commonwealth cannot present any credible witnesses with actual knowledge and/or information[,] and/or the Commonwealth cannot meet the beyond a reasonable doubt burden of proof[?]

V. [Whether the trial court] erred at time of sentencing [because Bolynn's] aggregate sentence comprised [] consecutive sentences, which is manifestly excessive, clearly unreasonable and inconsistent with the objects of the Sentencing Code[?] Specifically, Section 9721(b) of the Sentencing Code states that confinement shall be consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the

defendant[,] and [Bolynn's] sentence violates those maxims and/or policies.

Brief for Appellant at 3.

In his first claim, Bolynn argues that the trial court erred in denying his Omnibus Pre-trial Motion, which included a Motion to Suppress all evidence obtained after Bolynn was stopped by police as fruit of the poisonous tree.[2] *Id.* at 9; *see also* Omnibus Pre-trial Motion at 2-4. Bolynn claims that the stop was illegal because Bolynn matched Taylor's description only in the sense that he was a white male, and therefore, the police did not have the requisite reasonable suspicion to justify the stop. Brief for Appellant at 9. Bolynn argues that because the stop was illegal, all evidence found on his person or in the surrounding area should have been suppressed. *Id.* at 10.[3]

> Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the

---

[2] We note that while Bolynn also claims that the trial court erred in failing to suppress recordings of his telephone conversations made from the Erie County Prison, he did not raise this claim in his Concise Statement. Therefore, Bolynn has waived this claim. *See Commonwealth v. Berry*, 877 A.2d 479, 485 (Pa. Super. 2005) (stating that "issues which are not raised in a Concise Statement of Matters Complained of on Appeal under Pa.R.A.P. 1925 are waived on appeal.").

[3] Bolynn fails to cite any case law or other legal authority in support of his claim. *See* Pa.R.A.P. 2119(a) (stating that all arguments must contain discussion and citation of pertinent authority); *see also Berry*, 877 A.2d at 485 (stating that "issues that are not supported by citations to the record and to pertinent legal authority are waived."). Nevertheless, we will overlook this deficiency.

- 4 -

evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon those facts.

*Commonwealth v. Galendez*, 27 A.3d 1042, 1045 (Pa. Super. 2011) (*en banc*) (citation omitted).

The trial court addressed Bolynn's first claim, and concluded that it lacks merit. *See* Trial Court Opinion, 3/7/14, at 4. We agree with the sound reasoning of the trial court regarding Bolynn's first claim, and we adopt its Opinion as to this claim for the purpose of this appeal. *See id.*

In his second claim, Bolynn contends that the police officers tainted Taylor's identification, which led to a failure by the police officers to conduct a thorough investigation. Brief for Appellant at 11. Bolynn claims that "the taint from the faulty identification had already destroyed any possibility of a proper identification." *Id.* at 12.[4] Nevertheless, we will address Bolynn's claim.

Our review of the record discloses that Taylor had a sufficient independent basis for identifying Bolynn. The factors for finding an independent basis for the identification include

---

[4] We observe that Bolynn has failed to cite any evidence of record that the police tainted Taylor's identification through improper action, nor has he cited to any pertinent case law to support his claim. *See* Pa.R.A.P. 2119(a) (stating that arguments must be supported by pertinent citations to authority); *see also Berry*, 877 A.2d at 835.

(a) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness during the confrontation; and (5) the length of time between the crime and the confrontation.

*Commonwealth v. Kendricks*, 30 A.2d 499, 506 (Pa. Super. 2011).

Taylor testified that at the time of the robbery, she was certain that Bolynn was the perpetrator. *See* N.T., 9/18/13, at 51. Further, Corporal Filutze promptly responded to Taylor's residence within approximately one minute of receiving the dispatch, and Taylor immediately provided him with a description of Bolynn. *See id.* at 81, 86. A minute later, Patrolman DeLuca called Corporal Filutze, and requested that he bring Taylor to his location to identify Bolynn. *Id.* at 89. Taylor confirmed that Bolynn was the perpetrator, and indicated that she was acquainted with him. *See id.* at 45-47, 89-90; *see also* Trial Court Opinion, 2/19/14, at 1-2. Thus, Bolynn has failed to demonstrate that any actions by the police officers tainted Taylor's identification. Accordingly, Bolynn's claim lacks merit.

In his third claim, Bolynn avers that the evidence admitted during trial was insufficient to support his convictions because Taylor and her neighbor provided inconsistent testimony. Brief for Appellant at 13. Bolynn claims that he and Taylor were dating, that she was angry with him at the time of her identification, and that she was motivated to lie. *Id.*

In reviewing sufficiency of the evidence claims, we must determine whether the evidence admitted at trial, as well as all reasonable inferences draw therefrom, when viewed in the light

most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, to sustain a conviction, the facts and circumstances which the Commonwealth must prove, must be such that every essential element of the crime is established beyond a reasonable doubt.

*Commonwealth v. Moreno*, 14 A.3d 133, 136 (Pa. Super. 2011) (internal citations omitted). Additionally, "[t]he factfinder is free to believe all, part or none of the evidence presented." *Commonwealth v. Fuentes*, 991 A.2d 935, 946 (Pa. Super. 2003).

Bolynn has failed to demonstrate that Taylor contradicted herself during her testimony, or that her testimony contradicted her neighbor's testimony. Rather, our review of the record discloses that Taylor specifically testified that she and Bolynn were not in a romantic relationship, and that she had met him only a few times prior to the robbery. *See* N.T., 9/18/13, at 48-50, 60, 64. Taylor testified that she was not angry with Bolynn at the time, and that she did not call the police for revenge. *See id.* at 72. Taylor also identified Bolynn's hat during the trial, and testified that Bolynn was holding the gun throughout the robbery. *See id.* at 40-44, 56; ; *see also* Trial Court Opinion, 2/19/14, at 7. Thus, viewed in the light most favorable to the Commonwealth as verdict winner, we conclude that Bolynn's claim that Taylor provided inconsistent testimony lacks merit, and that the evidence was sufficient to support the convictions. *See* Trial Court Opinion, 2/19/14, at 6-10.

- 7 -

In his fourth claim, Bolynn argues that the verdict was against the weight of the evidence because Taylor's testimony was contradictory. Brief for Appellant at 15. In support of his claim, Bolynn incorporates the factual allegations he made in his third claim.[5] *Id.*

Our standard of review for weight of the evidence claims is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witness. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Collins*, 70 A.3d 1245, 1251 (Pa. Super. 2013) (citation omitted).

Here, as in his third claim, Bolynn has not demonstrated inconsistencies in Taylor's testimony. *See id.* (holding that appellant did not demonstrate that the verdict was against the weight of the evidence where "he did not present independent exculpatory evidence that would contradict the verdict nor did he so undermine the Commonwealth's evidence as to render it completely unbelievable."). Further, as noted above, Bolynn has not demonstrated that Taylor's testimony was so inconsistent as to shock this Court's collective conscience. Therefore, we conclude that this claim lacks merit.

---

[5] We note that incorporation by reference is "an unacceptable manner of appellate advocacy for proper presentation of a claim for relief to our Court." *Commonwealth v. Briggs*, 12 A.3d 291, 342 (Pa. 2011).

In his fifth claim, Bolynn asserts that his sentence is excessive because the trial court imposed consecutive sentences at the high end of the sentencing range. Bolynn's claim implicates the discretionary aspects of his sentence. Brief for Appellant at 16-18. However, before addressing Bolynn's challenge to the discretionary aspects of his sentence, we first address whether Bolynn's sentence is illegal. *See Commonwealth v. Orellana*, 86 A.3d 877, 882 n.7 (Pa. Super. 2014) (stating that this Court may consider an issue of illegality of sentence *sua sponte*).

Our review of the record demonstrates that the trial court imposed a mandatory minimum sentence under 42 Pa.C.S.A. § 9712 for the Robbery conviction. *See* Sentencing Order, 11/26/13. This statute has been ruled unconstitutional in its entirety under *Alleyne*.[6] *See Commonwealth v. Newman*, 99 A.3d 86, 101 (Pa. Super. 2014). Thus, without consideration or application of the mandatory sentencing scheme in set forth at 42 Pa.C.S.A. § 9712, we must vacate the judgment of sentence and remand for re-sentencing. Accordingly, we will not address Bolynn's claim regarding the discretionary aspects of his sentence.[7] Based on the foregoing, we affirm the convictions, vacate the sentence and remand for re-sentencing consistent with this memorandum.

---

[6] *Alleyne v. United States*, 133 S. Ct. 2151 (2013).

[7] Although we will not address Bolynn's discretionary aspects of sentence claim, we note that the trial court had the benefit of a pre-sentence investigation report.

Judgment of sentence vacated. Case remanded for re-sentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/2015

COMMONWEALTH OF      :      IN THE COURT OF COMMON PLEAS
PENNSLYVANIA      :      OF ERIE COUNTY, PENNSYLVANIA

         :

     v.          :      CRIMINAL DIVISION

         :

ALEXANDER SCOTT BOLYNN,      :      No. 863-2013
     Defendant.          :

## SUPPLEMENTAL 1925(a) OPINION

Garhart, J., March \_\_\_7\_\_\_, 2014.

     This matter comes before the Court on Defendant/Apellant's Notice of Appeal of this Court's Sentencing Order of November 26, 2013. Appellant filed a Concise Statement of Matters Complained of on Appeal on January 29, 2014. Therein, Appellant raises a number of issues, including an allegation that the Honorable John Garhart erred in denying Appellant's Omnibus Pre-Trial Motions.

     The Honorable John Garhart presided over Appellant's Suppression Hearing which was held on July 31, 2013. The Honorable William R. Cunningham presided over Appellant's jury trial and sentencing. Accordingly, this Supplemental 1925(a) Opinion has been issued to address the allegations of error regarding Appellant's Omnibus Pre-Trial Motions. The 1925(a) Opinion issued by the Honorable William R. Cunningham, including the factual and procedural history of this matter, is incorporated by reference herein.

     In his Omnibus Pre-Trial Motion, Appellant raised two Motions to Suppress:

1. Motion to Suppress evidence obtained as a result of Appellant's stop, search or arrest without probable cause or reasonable suspicion in violation of his rights under the U.S. and Pennsylvania Constitutions; and

2. Motion to Suppress Recordings/Statements made by Appellant Erie County Prison in violation of his privacy rights and without reading Appellant his Miranda rights.

1

At the Suppression Hearing, the Commonwealth offered three witnesses, and the defense offered no testimony. On the issue of the alleged illegal stop, search and arrest, the Commonwealth offered the testimony of Officer Steve DeLuca of the Erie Police Department. Officer DeLuca testified that he was dispatched to the 300 block of West 9th Street where a robbery/home invasion had just occurred. Suppression Hr'g Tr. at 23:22-23. Dispatch advised him that the suspects were two white males wearing masks and were last seen leaving the area westbound on 9th Street towards Chestnut Street, and they were armed. *Id.* at 24:2-9. It took Officer DeLuca less than one minute to arrive and he began canvassing the area for the suspects. *Id.* at 24:20-25. Officer DeLuca testified the area is dimly-lit and residential, with houses on both sides of the street, close together. *Id.* at 25:21-25. Officer DeLuca explained that it was 1:00 a.m. on a Tuesday morning, and the nearest bar was "way down on 8[th] Street." *Id.* at 27:16-23. As Officer DeLuca traveled eastbound on the 300 block of 10th Street, using his spotlight to light backyards, a young-adult, white male, later identified as Appellant, popped out between the houses. *Id.* at 26:17-28:4.

Officer DeLuca was suspicious that this individual was one of the suspects due to the following factors: (1) the time of night, (2) the location, (3) the proximity of the backyards from 9th and 10th Streets, (4) the fact that he was hiding between the houses, and (5) he matched the description from dispatch. *Id.* at 28:12-25. Dispatch provided Officer DeLuca with the further information that one of the suspects had been wearing a tan or brown Carhartt style coat. *Id.* at 28:25-29:2.

Based on this information, Officer DeLuca had a brief interaction with Appellant. *Id.* at 29:6-9. He pulled up his patrol car next to Appellant and advised that he wanted to talk to him

2

*Id.* at 29:9-30:25. Appellant was wearing a tan Carhartt style coat.[1] *Id.* at 32:19-23. During this time, Corporal Filutze, who was still at the residence with the female victim, advised Officer DeLuca over the radio that the suspect was wearing a blue hat with the letter "P" on it. *Id.* at 33:5-20. After recognizing that Appellant was wearing a blue hat with the letter "P" on it as described, Officer DeLuca told Appellant to place his hands on the car and that he was being placed under an investigative detention. *Id.* at 33:21-34:5. Several seconds later, the victim arrived with Corporal Filutze, who positively identified Appellant as being one of the suspects, and he was placed in custody. *Id.* at 34:7-9.

On the issue of the recordings at Erie County Prison, the Commonwealth offered the testimony of Detective Dennis Oborski of the Erie Police Department, who testified that he requested phone calls from Erie County Prison regarding the defendant in this case, which resulted in a new charge. *Id.* at 7:5-12. The Commonwealth also offered the testimony of Tony Massaro, an information systems manager at Erie County Prison. *Id.* at 10:23-22:12. Mr. Massaro explained that there is a recording system in place at the prison that stores all the outgoing calls for a period of three years. *Id.* at 11:18-12:16. In March 2013, Detective Oborski requested the telephone recordings of Appellant from Mr. Massaro, and Mr. Massaro turned over a CD containing the recordings. *Id.* at 13:7-20. Mr. Massaro testified that there is a tag on each of the prisoner phones that says the calls are recorded and monitored. *Id.* at 14:2-14. Mr. Massaro further testified that when inmates are booked into prison, they receive an inmate handbook that provides all calls are subject to inspection, recording, monitoring and disclosure, except those placed by a registered attorney representing the inmate. *Id.* at 15:17-16:17.

---

[1] On cross-examination, Officer DeLuca admitted that he could have been mistaken that Appellant was wearing the Carhartt coat at the time of their encounter. Nothing in his report indicated that Appellant had been wearing the Carhartt coat, and there is a dispute as to whether that the coat may have found between the houses by Officer Bogart. Nonetheless, this Court found Officer DeLuca's interactions with Appellant were proper.

3

Additionally, Mr. Massaro explained that there is an audio message at the beginning of every call that tells the caller that the call will be recorded and monitored. *Id.* at 17:3-23.

By Order of August 2, 2013, the Honorable John Garhart denied Appellant's Motion to Suppress for the reasons stated on the record. *See also Id.* at 50:9-11. As to the issue of the stop, search, and seizure, this Court found that Officer DeLuca's initial interaction with Appellant was a mere encounter.[2] *Id.* at 42:12-44:20. The encounter was reasonable because there was a reported crime in the area, and an individual matching the description popped up between houses in a residential area in the early morning hours of a Tuesday. *Id.* at 43:9-14. During the permissible mere encounter, the interaction escalated into an investigative detention when Officer DeLuca ordered Appellant to place his hands on the car. *Id.* at 44:11-20. The investigative detention was also proper because Officer DeLuca had reasonable suspicion to detain Appellant when he observed Appellant was wearing the same blue hat with the letter "P" on it. *Id.* Finally, the custodial arrest was supported by probable cause through the victim's in-person identification. Accordingly, this Court found that Appellant's stop, seizure, and arrest were lawful and denied the Motion to Suppress. *Id.* at 49:11-23.

As to the issue of the phone call recordings, this Court found that Appellant had no expectation of privacy in prison.[3] *Id.* at 49:23-50:1. Appellant was also on notice that the phone

---

[2] The Pennsylvania Supreme Court has recognized three categories of interaction between citizens and police. *Commonwealth v. Mendenhall*, 715 A.2d 1117, 1119 (Pa. 1998). The first is a "mere encounter," "which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond." *Id.* The second is an "investigative detention" which requires reasonable suspicion and "subjects a suspect to stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest." *Id.* The third is an arrest or "custodial detention" which must be supported by probable cause. *Id.* While the line between a mere encounter and an investigative detention is difficult to define, a person is under an investigative detention where a reasonable person would have believed that he was not free to leave. *See Mendenhall*, 715 A.2d at 1119-20. One example of a circumstance that might indicate a seizure would be "the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Commonwealth v. McClease*, 750 A.2d 320, 324-25 (Pa. Super. 2000) (citation omitted).

[3] *See Commonwealth v. Moore*, 928 A.2d 1092 (Pa. Super. 2007) (finding that an inmate had no constitutional right to privacy in his non-privileged prison mail).

4

calls would be monitored and recorded as demonstrated by the testimony of Mr. Massaro. Accordingly, this Court found that there was no grounds for suppression of the recordings. *Id.*

For the aforementioned reasons, this Court did not err in denying Appellant's Omnibus Pre-Trial Motions. Accordingly, this Court's judgment of sentence should be affirmed.

BY THE COURT:

_____ J.
John Garhart, Judge

cc:   The Office of the District Attorney
      The Clerk of Courts
      The Honorable William R. Cunningham
      Jason A. Checque, Esq.
        502 West Seventh Street
        Erie, PA 16502

5