J-A18019-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ATIBA WILSON | |
| Appellant | No. 1045 WDA 2016 |

Appeal from the Judgment of Sentence June 6, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0003580-2015
CP-02-CR-0012661-2015

BEFORE:  BOWES, J., LAZARUS, J., and OTT, J.

MEMORANDUM BY LAZARUS, J.:             **FILED:  OCTOBER 24, 2017**

Atiba Wilson appeals from the judgments of sentence, entered in the Court of Common Pleas of Allegheny County, following his convictions, on two separate dockets,[1] for burglary (F1),[2] various firearm charges,[3] and possession of marijuana.[4]  After careful review, we affirm in part and vacate in part.

---

[1] CC201503580 ("Burglary case"); CC201512661 ("Firearms cases").

[2] 18 Pa.C.S. § 3502(a)(2) (burglary overnight accommodation; no person present).

[3] 18 Pa.C.S. § 6106(a)(1)(firearms not to be carried without license) (F3); 18 Pa.C.S. § 6105(a)(1) (possession of firearm prohibited) (M1).

[4] 35 P.S. § 780-113(a)(31).

The trial court accurately summarized the facts of the Burglary case as follows:

> This matter arises out of [Wilson's] arrest on March 3, 2015. At trial the Commonwealth called Officer Louis Sitzman of the Borough of Swissvale Police who testified that as he was coming on patrol duty at approximately 2:06 p.m. when he received a dispatch concerning two males brandishing a handgun. The male with the firearm was described as wearing a blue and gray jacket, a gray hoodie with the hood up and black boots. As Officer Sitzman was exiting the police station and getting into his patrol vehicle he noticed three males walking towards the station, one of whom matched the exact description of the actor with the firearm. Officer Sitzman got into his vehicle, drove towards the men, exited his vehicle and "put the males at gunpoint." Officer Sitzman testified that it was [Wilson] who was wearing the blue and gray hoodie and had his hands in his pockets. [Wilson] did not comply with the order to remove his hands from his pockets but his companions did. At that point, [Wilson] fled the scene. Officer Sitzman pursued him for several blocks until [Wilson] jumped down from a 10 foot wall onto the train tracks and crossed the street into a nearby yard.
>
> Officer Sitzman, who was also a K-9 handler, retrieved his K-9 partner, and went to the location where [Wilson] was last seen. At that point, Officer Sitzman and his partners followed footprints in the snow to a fence which they climbed over into the backyard of a residence and ultimately found [Wilson] hiding behind some boxes in an enclosed porch of the residence. After [Wilson] repeatedly refused commands to exit the porch, the K-9 officer was sent into the porch and [Wilson] was then taken into custody.
>
> The Commonwealth also presented the testimony of the residents of the home that [Wilson] entered which established that [Wilson] was not authorized or permitted to enter the residence, that there was damage to the door of the residence and that furniture that had previously been in the enclosed porch was thrown into the yard.
>
> At the conclusion of the Commonwealth's case [Wilson] made a motion for judgment of acquittal on the charge of burglary on the basis that there was no evidence that the home was entered for the purpose of committing a crime. The Commonwealth

responded by stating that "There was testimony from the victim that the items that were on her porch were disturbed and they were placed in the yard." [Wilson]'s motion was denied.

[Wilson] then testified that he knew that Officer Sitzman was chasing him and that as he approached the residence on Park Avenue he "hopped over the fence, and I seen [sic] a shack or whatever and I went inside. I was coming in the house." [Wilson] acknowledged that he was in the residence for 5 to 6 minutes and stayed there until the K-9 officer was sent in at which time he was arrested. On cross examination, [Wilson] acknowledged that he ran from Officer Sitzman after he was approached and saw that he was in a marked police vehicle and in full uniform and he ran in an attempt to hide from the police. At the conclusion of the trial, [Wilson] argued that he was not guilty of burglary as the Commonwealth failed to establish that he entered the residence with the intent to commit a crime and specifically argued that he was not charged with criminal trespass. The Commonwealth argued that [Wilson] broke the locked door and entered the residence without permission. In addition, the Commonwealth argued that [Wilson] entered the residence to conceal himself with the intent to avoid apprehension in violation of 18 Pa.C.S.A. §5126. At the time of the verdict on June 6, 2016[,] [Wilson] was found guilty of burglary based on [Wilson]'s testimony that he was "in the house to commit the crime of fleeing from a police officer."

Trial Court Opinion, 1/18/2017, at 7-9 (citations to record omitted). On June 6, 2016, the trial court sentenced Wilson to 18-36 months' incarceration, with a 5-year probationary tail on the Burglary case, and a concurrent sentence of 36-72 months' imprisonment on the Firearms case.[5]

Wilson filed post-sentence motions that were denied. This timely appeal follows. On appeal, Wilson presents two issues for our consideration:

(1) Whether [] Wilson's conviction for Burglary at CC 201503580 must be reversed, and his judgment of

_____

[5] No further penalty was imposed on the drug and possession of firearm prohibited convictions.

- 3 -

sentence must be vacated, when the evidence was insufficient, as a matter of law, to establish that he entered the structure with the intent to commit a crime therein?

(2)   Whether the police stopped and searched [] Wilson without reasonable suspicion, based on specific and articulable facts, to believe that he was presently armed and dangerous, thereby requiring that his firearms convictions at CC 201512661 be reversed, and his judgment of sentence vacated?

Burglary Case

Wilson first contends that his burglary conviction must be vacated because the Commonwealth failed to prove that he had the requisite intent to commit a crime within the structure.

A person commits the offense of burglary under 18 Pa.C.S. § 3502(a)(2), if:

[*W*]*ith the intent to commit a crime therein*, the person [] . . . enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present[.]

18 Pa.C.S. § 3502(a)(2) (emphasis added).   In the instant case, the Commonwealth argued that Wilson was "trying to [e]lude the police" when he entered the residence.   *See* N.T. Non-Jury Trial, 5/23/16, at 33. Specifically, the Commonwealth stated "[section] 5126 of the Crimes Code [flight to avoid apprehension] is a crime . . . [and b]y [the defendant's] own testimony, he testified that he went there intending to conceal himself. That's why he broke in." *Id.* at 41.

We recognize that in **Commonwealth v. Brown**, 886 A.2d 256 (Pa. Super. 2005), our Court found that where the Commonwealth does specify the crime the defendant intended to commit, it must prove the requisite intent for that particular crime in order to prove a burglary. **Id.** at 260.

Instantly, at trial the Commonwealth specifically cited to the flight to avoid apprehension statute, acknowledged that the defendant admitted he entered the victim's structure with the intent to conceal himself, and stated in open court "[t]hat's why he broke in." Under the circumstances we similarly find that the Commonwealth should be required to prove Wilson's intent to commit the crime delineated under section 5126 in order to prove Wilson committed burglary.

The crime flight to avoid apprehension is defined as:

(a) Offense defined. — A person who willfully conceals himself or moves or travels within or outside this Commonwealth with the intent to avoid apprehension, trial or punishment commits a felony of the third degree **when the crime which he has been charged with or has been convicted of** is a felony and commits a misdemeanor of the second degree **when the crime which he has been charged with or has been convicted of** is a misdemeanor.

18 Pa.C.S § 5126(a) (emphasis added). Thus, an element of section 5126 is the requirement that an individual has already been charged or convicted of a crime. In **Commonwealth v. Phillips**, 129 A.3d 513 (Pa. Super. 2016), our Court found that "the plain language of [section 5126(a)] requires that a person have been charged with a crime. This language is simply not ambiguous." **Id.** at 518. Accordingly, our Court vacated the

defendant's section 5126(a) conviction where the Commonwealth failed to prove that he had been charged with a crime when Phillips fled from law enforcement.

We acknowledge that the Commonwealth is correct that in order to prove burglary a defendant need not be charged with, and the Commonwealth need not prove, the crime which he had the intent to commit when he entered the structure. **Commonwealth v. Lease**, 703 A.2d 506 (burglary conviction sustained on appeal where defendant acquitted of underlying crimes of burglary, theft and receiving stolen property). However, the Commonwealth's argument misses the mark. Wilson is not asserting that the Commonwealth had to charge him with or prove the crime of flight to avoid apprehension to sustain his burglary conviction. Rather, he argues that he could not have had the requisite intent to commit a crime (here, flight to avoid apprehension) for burglary purposes, where the intended crime itself, or at least that which the Commonwealth stated he was intending to commit therein, requires that he has first been charged with or convicted of *any* crime.

Because the Commonwealth specified that Wilson intended to commit the crime of flight to avoid apprehension when he entered the structure and Wilson had not yet been charged with or convicted of a crime at the time he entered the residence, there was no way he could have had the intent to commit the crime of flight to avoid apprehension. **Phillips**, **supra**. Without having that intent, Wilson could not be found guilty of burglary under the

facts and circumstances of this case. **Brown**, **supra**. Thus, we must vacate his section 5126(a) conviction.

Firearms Case – Suppression Issue

We rely upon the opinion authored by the Honorable Randal B. Todd to affirm the court's decision to deny Wilson's pretrial motion to suppress in CC 201512661. **See** Trial Court Opinion, 1/18/2017, at 2-6. Instantly, the officers corroborated a tip about an armed individual in the McDonalds prior to the police patting Wilson down, searching him and arresting him. Under a totality of the circumstances, there was a reasonable basis for the investigatory stop and for the officer's pat-down where they believed that Wilson was armed and dangerous. We instruct the parties to attach a copy of Judge Todd's decision in the event of further proceedings in the matter.[6]

Burglary conviction at CC 201503580 vacated. Remaining convictions at CC 201512661 affirmed. Judgments of sentence affirmed.[7] Jurisdiction relinquished.

_____

[6] In the interest of brevity, we have omitted reciting the facts underlying Wilson's conviction at CC 201512661. **See** Trial Court Opinion, 1/18/2017, at 2-4 (facts for Firearms case).

[7] Because the trial court ordered Wilson's burglary sentence to run concurrent with his firearm convictions, we need not remand for resentencing as the sentencing scheme has not been upset. **See Commonwealth v. Henderson**, 938 A.2d 1063, 1067 (Pa. Super. 2007) (stating that "since appellant's sentences were concurrent, the trial court's overall sentencing scheme has not been compromised, and it [wa]s not necessary to remand for re-sentencing.").

Judge Ott joins the Memorandum

Judge Bowes files a Concurring and Dissenting Memorandum.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  10/24/2017

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF            )            CRIMINAL DIVISION
PENNSYLVANIA               )
                          )            NO.   CC2015-03580
v.                        )                  CC2015-12661
                          )
ATIBA WILSON,             )
                          )
    Defendant             )


TODD, J.

January 18, 2017

## OPINION

These are appeals by Defendant, Atiba Wilson, from the judgments of sentence of June 6, 2016 at CC201503580 and CC201512661. At CC210503580 Defendant was found guilty of one count of Burglary in violation of 18 Pa.C.S.A. § 3502(a)(2) following a non-jury trial held on May 23, 2016. Defendant was sentenced to 18 to 36 months and 5 years probation. At CC201512661 Defendant was found guilty of one count of Firearms Not to be Carried W/O a License in violation of 18 Pa.C.S.A. § 6106(a)(1); one count of Possession of a Firearm Prohibited in violation of 18 Pa.C.S.A. § 6105(a)(1) and one count of Possession of Marijuana in violation of 35 Pa.C.S.A. § 780-113(a)(31) following a non-jury trial on June 6, 2016. Defendant was sentenced to 36 to 72 months for carrying a concealed weapon without a license. No further penalty was imposed at the remaining counts. Defendant filed timely post-sentence motions on June 13, 2016 which were denied by orders of June 20, 2016. On July 20, 2016 Defendant filed a Notice of Appeal in Superior Court. On July 21, 2016 an order was entered directing Defendant to file a Concise Statement of Matters Complained of on Appeal. On August 9, 2016 Defendant filed his Concise Statement setting forth the following:

1

"a.     With respect to CC201512661, Mr. Wilson's convictions were based upon the presentation of items seized from Mr. Wilson pursuant to a *Terry* search. However, the police did not have reasonable suspicion, based on specific and intelligible facts, to believe that Mr. Wilson was presently armed and dangerous. Consequently, the subsequent search of Mr. Wilson's person violated his rights under the Fourth Amendment of the United States Constitution and Article 1 § 8 of the Pennsylvania Constitution, and all items found on his person must be suppressed as fruit of the poisonous tree.

b.     With respect to CC201503580, the evidence was insufficient as a matter of law to support the conviction, in that it was not established that Mr. Wilson intended to commit a crime inside the structure entered."

## BACKGROUND

### Case Number CC201512661

This matter arises out of Defendant's arrest on September 22, 2015 after the police responded to a call for a disturbance involving a firearm at a McDonald's restaurant located in downtown Pittsburgh. Defendant filed a Motion to Suppress on the basis that items were seized from Defendant during an illegal search and should be suppressed. A suppression hearing was held on May 23, 2016. At the hearing the Commonwealth presented the testimony of Detective Matthew Zuccher of the City of Pittsburgh Police who testified that while on patrol on September 22, 2015 at approximately 8:00 p.m. he received a dispatch to proceed to the McDonald's restaurant on Smithfield Street for a disturbance involving a firearm. The actor involved was described as a black male with a blue hat or blue hooded jacket. (T., pp 2-3) As Detective Zuccher arrived at the restaurant he observed Defendant through the front glass of the restaurant. Defendant was wearing a blue jacket with the hood pulled up over his head with the hood pulled so tight only a small portion of his face was exposed. (T., pp. 4-5) When first observed, Defendant was walking towards the front of the store but when he observed the police he turned and walked towards the rear of the restaurant. Defendant then got behind two pillars

2

and began to peek out from behind the pillars. (T., pp. 4-5) Detective Zuccher testified that he approached Defendant and ordered him from behind the pillars and testified that:

> "I observed when he was walking towards me and I was walking towards him, I could see the outline of what I thought was a firearm, possible firearm in his waistband. Based on the description and his actions, I held onto him and did a pat down, a quick pat down. I just ran my hand over it, and I immediately detected a firearm." (T., p. 6)

Detective Zuccher testified that the gun was covered but that he could see the outline of the gun which he described as a large .45 caliber handgun. (T., p 8) The gun was loaded with four rounds. (T., p 8) Detective Zuccher testified that he had undergone training for the detection of firearms and he had made dozens of arrests involving firearms and that someone's waistband is a prevalent place to place a firearm. He also described the restaurant as a "nuisance property" and that the police receive calls on a nightly basis for "typically narcotics and firearms related" matters. (T., p. 8)

On cross examination Detective Zuccher acknowledged that when he first entered the restaurant he did not observe any criminal activity but was only responding to a disturbance call and was conducting an investigation. (T, p 9) The suppression motion was denied and the testimony for the suppression hearing was incorporated into the record for a nonjury trial held on June 6, 2006. Detective Zuccher again testified and the Commonwealth established that Defendant did not have a license to carry a concealed weapon. (Exhibit "1", pp 11-12) The Commonwealth also established that Defendant had a juvenile adjudication for aggravated assault. (Exhibit "2", pp. 12-13)

The Commonwealth also presented the testimony of Officer Rachmiel Gallman who testified during a search incident to the arrest Defendant was found in possession of a small

3

amount of marijuana. (T., p 16-17) At the conclusion of the non-jury trial Defendant was found guilty and sentenced as set forth above.

## DISCUSSION

In his concise statement Defendant alleges that the items seized pursuant to the pat down and arrest were illegally obtained because the police did not have a reasonable suspicion based on specific, articulable facts to believe that Defendant was armed and dangerous and, therefore, all items found on Defendant must be suppressed. The types or categories of encounters between police and a citizen have been described as follows:

> "There are three categories of police interactions which classify the level of intensity in which a police officer interacts with a citizen, and such are measured on a case by case basis. Traditionally, Pennsylvania Courts have recognized three categories of encounters between citizens and the police. These categories include (1) a mere encounter, (2) an investigative detention, and (3) custodial detentions. The first of these, a "mere encounter" (or request for information), which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause. Commonwealth v. Mendenhall, 552 Pa. 484, 488 715 A.2d 1117, 1119 (1998) (citing Commonwealth v. Polo, 563 Pa. 218, 759 A.2d 372, 375 (2000))." *Commonwealth v. Collins*, 950 A.2d 1041, 1044-49 (Pa. Super. 2008)

Defendant contends that Detective Zuccher acted only on an anonymous tip and that an anonymous tip does not provide a basis for an investigatory detention or *Terry* search. In *Commonwealth v. Wimbush*, 750 A.2d 807 (2000) the Pennsylvania Supreme Court discussed the law pertaining to a search based on an anonymous tip stating:

4

"Relying upon *Commonwealth v. Hawkins*, 547 Pa. 652, 692 A.2d 1068 (1997), a factually similar case[3], the Court held in *Jackson* that the anonymous tip did not justify a stop and frisk of the defendant. *Jackson*, at 494, 698 A.2d at 576. In *Hawkins*, a plurality of the Court explained that when police receive an anonymous call alleging that a person of a particular description is carrying a gun at a particular location, and the police broadcast that information to patrol cars, neither the dispatcher nor the officers in their cars know whether the information is reliable. *Hawkins*, 547 Pa. at 656, 692 A.2d at 1070. The Court observed that an anonymous tip may be nothing more than a mere prank call. *Id.* At the same time, it may be based on no more than the caller's unparticularized hunch. *Jackson*, 548 Pa. at 490, 698 A.2d at 574; *see also White*, 496 U.S. at 329, 110 S.Ct. at 2415 (anonymous tips provide "virtually nothing from which one might conclude that the caller is either honest, or his information reliable"). Because of its unreliability, an anonymous radio call alone is insufficient to establish a reasonable suspicion of criminal activity. *Jackson, supra; Hawkins, supra*" *Commonwealth v. Wimbush*, 750 A.2d 807, 811 (2000)

The Court further noted that that "the fact that the police proceeded to the designated location and saw a person matching the description in the call did not corroborate any alleged criminal activity. *Jackson*, 548 Pa. at 492, 698 A.2d at 574–75 (quoting *Hawkins*, 547 Pa. at 656–57, 692 A.2d at 1070). However the Court also stated:

"When the police receive unverified information that a person is engaged in illegal activity, the police may observe the suspect and conduct an investigation. If police surveillance produces a reasonable suspicion of criminal conduct, the suspect may be stopped and questioned." *Commonwealth v. Wimbush*, 750 A.2d 807, 811–12 (2000)

In the present case, Detective Zuccher testified concerning specific observations that he made of Defendant as he approached the restaurant. Detective Zuccher observed Defendant turn and walked towards the rear of the restaurant as soon as he noted the police approaching. In addition, Defendant appeared to purposely stand behind pillars in the restaurant and then "peek" out at the officers and then draw his head back. As Detective Zuccher approached Defendant and asked him to come from behind the pillars he noted the "outline" of what he believed to be a firearm in Defendant's waistband. Based on his training and experience, he knew that the waistband was

5

an area is often carried. Considering the totality of the circumstances, which included the dispatch for a disturbance involving a firearm, Detective Zuccher's independent observations of Defendant's movements in the restaurant and the observation of the outline of the handgun in his waistband, it is clear there was a reasonable basis for an investigatory stop and to believe that Defendant was armed and dangerous. In *Commonwealth v. Wilson*, 927 A. 2d. 279 (Pa. Super. 2007) the Court stated:

> "If, during the course of a valid investigatory stop, an officer observes unusual and suspicious conduct on the part of the individual which leads him to reasonably believe that the suspect may be armed and dangerous, the officer may conduct a pat-down of the suspect's outer garments for weapons." *Commonwealth v. E.M./Hall*, 558 Pa. 16, 735 A.2d 654, 659 (1999). In order to establish reasonable suspicion, the police officer must articulate specific facts from which he could reasonably infer that the individual was armed and dangerous. *See Commonwealth v. Gray*, 896 A.2d 601, 606 (Pa.Super.2006). When assessing the validity of a *Terry* stop, we examine the totality of the circumstances, *see id.*, giving due consideration to the reasonable inferences that the officer can draw from the facts in light of his experience, *while disregarding any unparticularized suspicion or hunch. See Commonwealth v. Zhahir*, 561 Pa. 545, 751 A.2d 1153, 1158 (2000). *Commonwealth v. Wilson*, 927 A.2d 279, 284 (Pa. Super. 2007)

Although a weapons frisk may not be conducted on the basis of a mere hunch an officer need not be absolutely certain that the individual is armed. The issue is whether a reasonably prudent police office in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Commonwealth v. Mesa*, 683 A.2d 643 (1996) In this case, it is clear that a reasonably prudent police officer would be justified in conducting the search of Defendant. Defendant's motion to suppress was appropriately denied.

6

## BACKGROUND

### Case NO. 201503580

This matter arises out of Defendant's arrest on March 3, 2015. At trial the Commonwealth called Officer Louis Sitzman of the Borough of Swissvale Police who testified that as he was coming on patrol duty at approximately 2:06 p.m. when he received a dispatch concerning two males brandishing a handgun. The male with the firearm was described as wearing a blue and gray jacket, a gray hoodie with the hood up and black boots. As Officer Sitzman was exiting the police station and getting into his patrol vehicle he noticed three males walking towards the station, one of whom matched the exact description of the actor with the firearm. Officer Sitzman got into his vehicle, drove towards the men, exited his vehicle and "put the males at gunpoint." (T., p. 19) Officer Sitzman testified that it was Defendant who was wearing the blue and gray hoodie and had his hands in his pockets. Defendant did not comply with the order to remove his hands from his pockets but his companions did. At that point, Defendant fled the scene. (T., p. 20) Officer Sitzman pursued him for several blocks until Defendant jumped down from a 10 foot wall onto the train tracks and crossed the street into a nearby yard. (T., p. 21).

Officer Sitzman, who was also a K-9 handler, retrieved his K-9 partner, and went to the location where Defendant was last seen. At that point, Officer Sitzman and his partners followed footprints in the snow to a fence which they climbed over into the backyard of a residence and ultimately found Defendant hiding behind some boxes in an enclosed porch of the residence. (T., pp. 22-23) After Defendant repeatedly refused commands to exit the porch, the K-9 officer was sent into the porch and Defendant was then taken into custody.

7

The Commonwealth also presented the testimony of the residents of the home that Defendant entered which established that Defendant was not authorized or permitted to enter the residence, that there was damage to the door of the residence and that furniture that had previously been in the enclosed porch was thrown into the yard. (T., pp. 27 – 32).

At the conclusion of the Commonwealth's case Defendant made a motion for judgment of acquittal on the charge of burglary on the basis that there was no evidence that the home was entered for the purpose of committing a crime. The Commonwealth responded by stating that "There was testimony from the victim that the items that were on her porch were disturbed and they were placed in the yard." (T., p.33). Defendant's motion was denied.

Defendant then testified that he knew that Officer Sitzman was chasing him and that as he approached the residence on Park Avenue he "hopped over the fence, and I seen a shack or whatever and I went inside. I was coming in the house." (T., p. 36) Defendant acknowledged that he was in the residence for 5 to 6 minutes and stayed there until the K-9 officer was sent in at which time he was arrested. On cross examination, Defendant acknowledged that he ran from Officer Sitzman after he was approached and saw that he was in a marked police vehicle and in full uniform and he ran in an attempt to hide from the police. (T., pp. 37 – 38) At the conclusion of the trial, Defendant argued that he was not guilty of burglary as the Commonwealth failed to establish that he entered the residence with the intent to commit a crime and specifically argued that he was not charged with criminal trespass. (T., p. 39) The Commonwealth argued that Defendant broke the locked door and entered the residence without permission. In addition, the Commonwealth argued that defendant entered the residence to conceal himself with the intent to avoid apprehension in violation of 18 Pa.C.S.A. §5126. At the time of the verdict on June 6, 2016 Defendant was found guilty of burglary based on Defendant's testimony that he was "in the

8

house to commit the crime of fleeing from a police officer." Defendant's Post Sentence Motion was denied and this appeal followed.

## DISCUSSION

In his sole issue on appeal Defendant asserts the evidence was insufficient as a matter of law to support the conviction for burglary in that it was not established that Defendant intended to commit a crime at the time that he entered the building. Defendant was charged with burglary in violation of 18 Pa.C.S.A. §3502 (a)(2) which provides as follows:

> (a) **Offense defined.**--A person commits the offense of burglary if, with the intent to commit a crime therein, the person:
> (2) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present. 18 Pa.C.S.A.§ 3502(a)(2)

In his post sentence motion Defendant argued that he could not be found guilty of burglary because the Commonwealth had failed to prove that Defendant intended to commit a crime when entering the building and specifically referred to 18 Pa.C.S.A. 5126. In his brief Defendant cited *Commonwealth v. Philips*, 129 A.3d 513, (Pa. Super. 2015), *decided December 14, 2015.* In *Philips*, the Court found, as a matter of first impression, that a violation of 18 Pa.C.S.A. §5126 can only be found if the defendant had been charged with a crime at the time he fled. §5126 provides:

> " Flight to avoid apprehension, trial or punishment. (a) Offense defined.—A person who willfully conceals himself or moves or travels within or outside this Commonwealth with the intent to avoid apprehension, trial or punishment commits a felony of the third degree when the crime which he has been charged with or has been convicted of is a felony and commits a misdemeanor of the second degree when the crime which he has been charged with or has been convicted of is a misdemeanor." 18 Pa.C.S.A. §5126

9

The Court in *Philips* stated:

> "Since the flight to avoid apprehension statute is plain on its face, and the Commonwealth did not prove that Appellant had been charged with a crime when he fled, insufficient evidence existed to find him guilty of the aforementioned offense." *Commonwealth v. Phillips*, 129 A.3d 513, 519 (2015)

Based on *Philips* Defendant argues that he could not have intended to commit a crime at the time that he entered the building, that is a violation of §5126, as he was not charged with a crime at the time he fled and, therefore, could not have been convicted of burglary. However, the present case is distinguishable from *Philips* because Defendant testified specifically that he entered the residence with the intent of fleeing the police and it also clear that he was not authorized to enter the premises. A defendant does not have to be charged or convicted of the crime that he intended to commit when entering a structure in order to be convicted of burglary. Defendant argued at trial that he had not been charged with criminal trespass. Criminal trespass is defined in pertinent part as follows:

> (a) **Buildings and occupied structures.--**
> (1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:
> (i) enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof; or
> (ii) breaks into any building or occupied structure or separately secured or occupied portion thereof. 18 Pa.C.S.A. § 3503[1]

---

[1] *In Leach v. Commonwealth*, 141 A.3d 426 2016), decided June 20, 2016, the Supreme Court affirmed the Commonwealth Court's order of June 25, 2015 in *Leach v. Commonwealth*, 118 A.3d 1271 (Pa. Cmwlth. 2015), which found that Act 192 signed by then Governor Corbett on November 6, 2014, effective January 5, 2015 was unconstitutional and void as it was promulgated in violation of the single-subject rule. The Supreme Court noted that certain portions of the Act attempted to amend §3503 stating:

> "The Senate Judiciary Committee added a section amending the existing trespass provision of the Crimes Code, *see* 18 Pa.C.S. § 3503, to specify that an individual who trespasses in order to steal secondary metal commits a first-degree misdemeanor as a "simple trespasser." *Id.* § 3503(b.1)(1)(iv), (b.1)(2). The committee later made an additional revision to Section 3503 defining "secondary metal" by reference to the definition contained in Section 3935 (which, as noted, sets forth the new substantive offense). The bill's title was updated to reflect these

10

In *Commonwealth v. Brown*, 886 A.2d 256 (Pa. Super. 2005) the Court noted that:

> ". . .the Commonwealth is not required to specify what crime a defendant, who is charged with burglary (or attempted burglary), was intending to commit. *Commonwealth v. Von Aczel*, 295 Pa.Super. 242, 441 A.2d 750 (1981). Further, the Commonwealth need not prove the underlying crime to sustain a burglary conviction. *Commonwealth v. Lease*, 703 A.2d 506 (Pa.Super.1997) *Commonwealth v. Brown*, 886 A.2d 256, 260 (Pa. Super. 2005)

In *Commonwealth v. Quintua*, 56 A.3d 399, 402 ( Pa. Super. 2012) the Superior Court discussed the elements of burglary and criminal trespass. The Court stated:

> "Examining the elements of criminal trespass, a conviction for that offense requires a person: (1) to break or enter into with subterfuge any building or occupied structure; (2) knowing he is not licensed or privileged to do so. *See* 18 Pa.C.S.A. § 3503(a)(1). On the other hand, to commit burglary, a person must: (1) enter a building or occupied structure; (2) with intent to commit a crime therein. *See* 18 Pa.C.S.A. § 3502(a). The plain language of the respective statutes demonstrates why they do not merge. Criminal trespass contains an element of knowledge—a person committing that offense must know he is not privileged to enter the premises. Burglary has no such knowledge requirement. Burglary does, however, require intent to commit a crime within the premises, an element that criminal trespass lacks. *Commonwealth v. Quintua*, 56 A.3d 399, 402 (2012)

Although he was neither charged nor convicted of an underlying crime, Defendant's acknowledgement that he entered the residence while fleeing from the police and when he was not licensed or privileged to do so supports the conviction for burglary.

By the Court:

_____ J.

minor revisions. *See* HB 80, Printer's No. 4284, at 1." *Leach v. Commonwealth*, 141 A.3d 426, 428 (Pa. 2016)

11