J-A27001-15

2015 PA Super 259

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ARTHUR PHILLIPS, | |
| Appellant | No. 1427 WDA 2014 |

Appeal from the Judgment of Sentence July 30, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0002048-2013

BEFORE:  BOWES, OLSON, AND STABILE, JJ.

OPINION BY BOWES, J.:                     **FILED DECEMBER 14, 2015**

Arthur Phillips appeals from the aggregate judgment of sentence of fourteen to twenty-eight years incarceration imposed by the trial court after a jury found him guilty of robbery, aggravated assault, conspiracy to commit robbery, and flight to avoid apprehension.  We affirm in part, reverse in part, vacate the judgment of sentence, and remand for resentencing.

The sixty-three-year-old male victim in this matter left his home in his vehicle to travel to another home in order to walk his friend's dog.  After returning to his house, the victim noticed that his front door was open. When he entered his living room, he observed that the room had been ransacked.  In addition, it appeared that someone had tried to force open his locked bedroom door.  The victim left that door locked because he had a 9 mm handgun therein.  He unlocked the door and retrieved his firearm before checking the remainder of his home.

Upon entering the foyer, he saw a large male standing outside the doorway who appeared ready to force open the door. When the victim demanded to know who the male was, the intruder fled. The victim exited onto his porch where he encountered another individual wearing a blue bandana and carrying an AK-47 semi-automatic rifle. That person, Appellant, approached the victim and appeared to raise his rifle and stated, "Give me the shit. Give me the shit." N.T., 2/20/14, at 106. The victim grabbed the rifle and a struggle ensued in which Appellant lost hold of his weapon and attempted to take the victim's handgun. Appellant began punching the victim while trying to secure the victim's gun. As the fight continued, Appellant bit the victim in the shoulder and began to hit him with repeated blows. The victim was able to fire a shot at Appellant. That shot did not hit Appellant and Appellant struck the victim several times before retrieving the rifle and fleeing. The victim attempted to fire another round at Appellant, but his weapon jammed. The victim suffered a broken right hand, several lacerations, as well as bite wounds on his hands, arm, and shoulder.

Penn Hills police officer Bernard Sestili responded to a report of shots fired. Police were informed that suspects were believed to be fleeing in a burgundy Buick and were armed. As Officer Sestili approached the area, he saw a burgundy Buick pass him. Accordingly, he activated his lights and attempted to pull the vehicle over. The driver of the Buick initially pulled the

vehicle over, but sped away after Officer Sestili began to exit his car. The occupants of the Buick then engaged in a high-speed chase with police, reaching speeds that were close to twice the posted speed limits of twenty-five and thirty-five miles per hour on the various roads.

While fleeing from law enforcement, the Buick proceeded through several red lights and travelled in the opposite lane of travel. While attempting to make a turn at an intersection, the car crashed into a guard rail. Officer Sestili drove his car into the left side of the Buick and, with his weapon drawn, directed the driver to stop. The driver began to flee and Officer Sestili deployed his taser, striking the driver. The driver fell to the ground momentarily, but returned to his feet and ran away. Officer Sestili and another officer pursued and were able to use their tasers again to subdue the driver, Joshua Yingling. Another passenger, Clayton McKinnon, also fled but was captured by police. Police also apprehended Appellant after a foot chase. Inside the Buick, police recovered an AK-47 rifle with a loaded magazine attached to the gun, and a pair of black gloves.

The Commonwealth ultimately charged Appellant with robbery, aggravated assault, conspiracy to commit robbery, flight to avoid apprehension, criminal trespass, and resisting arrest. The jury acquitted Appellant of trespassing and resisting arrest, but found him guilty as to the remaining charges. The court sentenced Appellant on May 13, 2014. Specifically, the court sentenced Appellant to ten to twenty years

imprisonment for the robbery count, two to four years for aggravated assault, and one to two years at both the conspiracy and flight to avoid apprehension charges. The court imposed each sentence consecutively for a total sentence of fourteen to twenty-eight years incarceration.

Appellant timely filed a post-sentence motion on May 21, 2014, which the Commonwealth opposed. The court conducted a hearing on July 30, 2013, and denied the motion. This timely appeal ensued. The trial court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, after receiving several extensions due to the unavailability of the trial transcript. The trial court authored its Rule 1925(a) opinion, and the matter is now ready for our review. Appellant presents three issues for this Court's consideration.

I.  Was the evidence sufficient to support Mr. Phillips' conviction for flight to avoid apprehension, in violation of 18 Pa.C.S. § 5126, where the Commonwealth presented no evidence to suggest that Mr. Phillips fled to avoid apprehension on a previous charge or conviction?

II.  Was the evidence sufficient to support Mr. Phillips' conviction for aggravated assault where the Commonwealth failed to establish that Mr. Phillips attempted to cause, or did cause, serious bodily injury to [the victim]?

III.  Did the trial court abuse its discretion at sentencing by impermissibly relying on Mr. Phillips' prior criminal history and the gravity of the offense as the sole bases for imposing an aggravated range sentence and by failing to consider numerous mitigating factors that weighed against the imposition of an aggravated range sentence?

Appellant's brief at 6.

Although Appellant in his initial claim addresses the sufficiency of the evidence relative to his flight to avoid apprehension charge, the issue relates to statutory interpretation. Specifically, Appellant and the Commonwealth dispute whether the statutory crime itself applies to a person who has not yet been charged with a crime when he flees from law enforcement. This is a matter of first impression. Questions of statutory interpretation are questions of law. *Commonwealth v. Steffy*, 36 A.3d 1109, 1111 (Pa.Super. 2012). Therefore, our standard of review is *de novo*. *Id*. The flight to avoid apprehension statute reads,

> § 5126. **Flight to avoid apprehension, trial or punishment**.
> **(a) Offense defined.**—A person who willfully conceals himself or moves or travels within or outside this Commonwealth with the intent to avoid apprehension, trial or punishment commits a felony of the third degree when the crime which he has been charged with or has been convicted of is a felony and commits a misdemeanor of the second degree when the crime which he has been charged with or has been convicted of is a misdemeanor.

18 Pa.C.S. § 5126.

Appellant argues that a plain reading of the statute indicates that the law criminalizes "the conduct of those individuals who flee to avoid standing trial or sentencing after they have already been charged or convicted." Appellant's brief at 17 (emphases removed). He notes that criminal statutes are to be strictly construed and any ambiguity is to be resolved in favor of the accused. According to Appellant, the legislature's usage of the phrase

"has been charged" denotes that it intended to punish those who flee after having previously been charged with a crime.

Appellant, acknowledging that no case law directly addresses this issue, analogizes the statute in question with the escape statute found at 18 Pa.C.S. § 5121. That statute defines a third-degree felony escape in relevant part as when the actor was "under arrest for or detained on a charge of felony" or "convicted of a crime[.]" 18 Pa.C.S. § 5121(d)(1)(i)(A)-(B). Appellant contends that the phrase "on a charge of felony" demonstrates that the legislature intended to criminalize actions whereby a person who has not yet been charged with a crime removes himself from official detention. He continues that the legislature distinguished between the situation where a person escapes from official detention for a present offense and escapes after having been sentenced. *See id*. In a similar vein, Appellant submits that this Court's interpretation of the escape statute in *Commonwealth v. Janis*, 583 A.2d 495 (Pa.Super. 1990), buttresses his position.

In *Janis*, this Court found insufficient evidence to find the defendant guilty of a felony escape. Therein, the defendant was arrested for retail theft, which is ordinarily a summary offense. After his arrest, but before criminal charges had formally been filed, Janis remained seated in a police station for two hours when the detective watching him received a personal telephone call. The officer handcuffed Janis to a wall, but left him otherwise

unattended. The officer failed to adequately secure the handcuffs and Janis walked out of the police station. Another detective approached in a car and Janis fled. The **Janis** Court reasoned that because the statute reads in the past tense, a felony escape could only exist if the accused was arrested or detained at that time for a felony. Under Appellant's view, the legislature's use of the past tense in the flight to avoid apprehension statute indicates that it intended to punish flight after the person had been charged with a crime. Since Appellant had not yet been charged with any crime, he asserts that he could not have violated the law at issue.

The Commonwealth responds that "[b]y inserting the phrase 'intent to avoid prosecution' the Legislature has expanded the time frame for individuals to submit to lawful process and judicial fact finding." Commonwealth's brief at 6. It argues that "it makes no sense to countenance flight to avoid prosecution just because police haven't had sufficient time to prepare a charging document[.]" **Id**. The Commonwealth does not engage the actual text of the statute discussed by Appellant nor proffer any argument relative to statutory interpretation of that language. Instead, the Commonwealth relies on statutory interpretation of a federal statute that is materially distinguishable. In this respect, the Commonwealth contends that federal courts' interpretations of 18 U.S.C. §

1073,[1] flight to avoid prosecution or giving testimony, support its view that Appellant was not required to have been criminally charged to trigger the Pennsylvania flight to avoid apprehension charge. Relying on a Second

_____

[1] § 1073. Flight to avoid prosecution or giving testimony

Whoever moves or travels in interstate or foreign commerce with intent either (1) to avoid prosecution, or custody or confinement after conviction, under the laws of the place from which he flees, for a crime, or an attempt to commit a crime, punishable by death or which is a felony under the laws of the place from which the fugitive flees, or (2) to avoid giving testimony in any criminal proceedings in such place in which the commission of an offense punishable by death or which is a felony under the laws of such place, is charged, or (3) to avoid service of, or contempt proceedings for alleged disobedience of, lawful process requiring attendance and the giving of testimony or the production of documentary evidence before an agency of a State empowered by the law of such State to conduct investigations of alleged criminal activities, shall be fined under this title or imprisoned not more than five years, or both. For the purposes of clause (3) of this paragraph, the term "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States.

Violations of this section may be prosecuted only in the Federal judicial district in which the original crime was alleged to have been committed, or in which the person was held in custody or confinement, or in which an avoidance of service of process or a contempt referred to in clause (3) of the first paragraph of this section is alleged to have been committed, and only upon formal approval in writing by the Attorney General, the Deputy Attorney General, the Associate Attorney General, or an Assistant Attorney General of the United States, which function of approving prosecutions may not be delegated.

18 U.S.C. § 1073.

Circuit Court of Appeals decision from 1957, **United States v. Bando**, 244 F.2d 833 (2d. Cir. 1957), the Commonwealth asserts that a prior charged crime is not an element of the Pennsylvania offense. In **Bando**, the defendants asserted that they could not be found guilty of conspiracy to violate the federal flight to avoid prosecution statute because the individual whom they were assisting in fleeing had not been charged with a crime when they helped him flee. The federal court rejected that claim, opining that the words "to avoid prosecution" could not be construed as meaning "to avoid a pending prosecution." **Bando**, **supra** at 843. It added that the word "charged" was not used in relation to avoiding prosecution, but was inserted with respect to the aspect of the crime dealing with avoiding providing testimony. **Id**. Instantly, the words "has been charged" are used in conjunction with avoiding apprehension. Thus, the **Bando** Court's rationale does not apply.

In addition, the Commonwealth cites **United States v. Frank**, 864 F.2d 992 (3rd Cir. 1988), in support. In **Frank**, the defendant was a Pennsylvania attorney. He had been told by an Allegheny County detective, in November of 1986, that he might be charged with forgery and theft of municipal bounds. The defendant used his son's yacht and traveled to the Bahamas. The detective filed state criminal charges and obtained a warrant for his arrest on January 5, 1987. Three days later, a federal criminal complaint charged the defendant under 18 U.S.C. § 1073. On November 5,

1987, the defendant was arrested in Allegheny County. The defendant argued that he could not be convicted under the federal law because when he left the area, he had not been charged with a crime. The **Frank** Court, quoting **Bando**, rejected that argument. As noted, the reasoning of **Bando** does not apply in the present case. Accordingly, we proceed to examine the statute based on well-established principles governing statutory interpretation.

Review of statutory language is governed by legislative enactments codifying long-standing common law standards. **See** 1 Pa.C.S. § 1921. In this regard, our legislature has outlined that, "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." **Id**. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." **Id**.

We strictly interpret criminal statutes, 1 Pa.C.S. § 1928(b)(1), and we resolve any doubt as to a criminal statute's meaning in favor of the defendant. **Commonwealth v. Graham**, 9 A.3d 196, 202 n. 13 (Pa. 2010). Only where the statutory language is not explicit do we engage in discerning legislative intent beyond the face of the text. 1 Pa.C.S. § 1921(c). In this respect, the legislature has outlined various considerations a court may take into account. Specifically, courts consider:

(1) the occasion and necessity for the statute; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other statutes upon the same or similar subjects; the consequences of a particular interpretation; (7) the contemporaneous legislative history; and (8) legislative and administrative interpretations of such statute. 1 Pa.C.S. § 1921.

***In the Interest of C.S.***, 63 A.3d 351, 355 (Pa.Super. 2013).

Here, the plain language of the pertinent portion of the statute requires that a person have been charged with a crime. This language is simply not ambiguous. The Commonwealth has failed to cite or point to a single Pennsylvania case in support of its interpretation. That is, it has not discussed any case law where a defendant was found guilty of fleeing to avoid apprehension where the person had not been charged with a crime at the time he or she fled.[2] Moreover, as outlined above, we do not find the Commonwealth's reliance on a textually distinct federal statute to be either persuasive or particularly instructive. The applicable part of the federal law does not contain language similar to the Pennsylvania statute's requirement that the person "has been charged with" a felony or misdemeanor. 18 Pa.C.S. § 5126(a). Rather, the federal statute prohibits moving interstate to avoid prosecution, among other actions related to avoiding court

---

[2]  The Commonwealth also has not collected any case law from our sister states in support of its interpretation.

proceedings. Accordingly, the Commonwealth's reliance on cases interpreting 18 U.S.C. § 1073 is not instructive.

Our legislature has also used the phrase "has been charged" in other statutory contexts. *See* 18 Pa.C.S. § 5105 (hindering apprehension). In grading the hindering offense, the General Assembly outlined that the crime would be a felony of the third degree "if the conduct which the actor knows **has been charged or is liable to be charged** against the person aided would constitute a felony of the first or second degree." 18 Pa.C.S. § 5105(b) (emphasis added). Thus, it is apparent that our legislature can distinguish between individuals charged with crimes and those who have yet to be charged. Since the flight to avoid apprehension statute is plain on its face, and the Commonwealth did not prove that Appellant had been charged with a crime when he fled, insufficient evidence existed to find him guilty of the aforementioned offense. Thus, we reverse Appellant's judgment of sentence as to flight to avoid apprehension and discharge him as to that count. As this reversal disrupts the sentencing court's overall sentencing scheme, Appellant must be resentenced.

We now consider Appellant's second sufficiency of the evidence claim. Appellant contends that the Commonwealth did not establish sufficient evidence to prove that he caused or attempted to cause serious bodily injury with respect to his aggravated assault count. In performing our sufficiency review, we consider all of the evidence admitted, even improperly admitted

evidence. ***Commonwealth v. Watley***, 81 A.3d 108, 113 (Pa.Super. 2013) (*en banc*). We view the evidence in a light most favorable to the Commonwealth as the verdict winner, drawing all reasonable inferences from the evidence in favor of the Commonwealth. ***Id***.

The evidence "need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." ***Id***. When evidence exists to allow the fact-finder to determine beyond a reasonable doubt each element of the crimes charged, the sufficiency claim will fail. ***Id***. In addition, the Commonwealth can prove its case by circumstantial evidence. Where "the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances[,]" a defendant is entitled to relief. ***Id***. This Court does not "re-weigh the evidence and substitute our judgment for that of the fact-finder." ***Id***.

Appellant maintains that the Commonwealth did not establish that the victim's injuries resulted in permanent disfigurement or protracted impairment of a bodily function or organ. ***See*** 18 Pa.C.S. § 2301 (defining serious bodily injury as "[b]odily injury which create a substantial risk of permanent disfigurement, or protracted loss or impairment of any bodily member or organ."). In addition, Appellant asserts that the Commonwealth did not present sufficient evidence to show that Appellant attempted to cause serious bodily injury. He argues that there was no evidence that he

pointed his rifle at the victim or threatened him verbally. Appellant adds that the evidence that he punched and bit the victim was not sufficient to demonstrate intent to cause serious bodily injury. He also contends that causing a broken bone, alone, is not sufficient to establish serious bodily injury.

Appellant distinguishes this case from **Commonwealth v. Fortune**, 68 A.3d 980 (Pa.Super. 2013) (*en banc*). In **Fortune**, the victim was pumping gas at a Philadelphia gas station. She exited her vehicle and saw the defendant in the parking lot. The defendant initially approached and asked if she had a cigarette. The victim told him that she did not smoke and the defendant walked away. However, after the victim finished pumping gas, she looked up to see the defendant standing in front of her aiming a gun at her forehead. The defendant told the victim to let go of the keys or he was going to blow her head off. This Court found those facts sufficient to establish an attempt to cause serious bodily injury.

Appellant avers that the testimony revealed that he trotted toward the victim with his rifle lowered and although he stated, "Give me the shit. Give me the shit," N.T., 2/20/14, at 106, he did not verbally threaten to shoot the victim. He continues that he never attempted to fire the rifle or pointed it at the victim. Accordingly, Appellant posits that the Commonwealth did not prove that he attempted to cause serious bodily injury.

The Commonwealth acknowledges that the victim did not sustain serious bodily injury, but counters that it did prove Appellant attempted to cause serious bodily injury. It highlights that Appellant struggled with the victim over his loaded AK-47 rifle and that Appellant repeatedly attempted to grab the victim's own weapon. Appellant bit the victim about his shoulder, hands, fingers, and arms. Further, Appellant caused the victim to break a bone in the victim's hand. The testimony also reveals that Appellant repeatedly punched the victim and actually struck the victim after the victim fired a shot at him.

We find the evidence in this case, when viewed in a light most favorable to the Commonwealth, more than sufficient to establish that Appellant attempted to cause serious bodily injury. Under the applicable aggravated assault statute, an "attempt" transpires when an accused, with specific intent, acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury. *See Fortune*, *supra* at 984. Appellant attacked a sixty-three-year-old man while armed with a loaded AK-47 on the porch of the victim's home. While struggling with the victim over both the rifle and the victim's gun, Appellant broke the victim's hand and repeatedly bit him. Appellant also pummeled the victim with his fists and fled after the victim fired a shot at him. The facts of this matter are more indicative of aggravated assault than those at issue in *Fortune*. The struggle over the weapons and the beating that Appellant inflicted, viewed together,

- 15 -

demonstrate that Appellant intended to cause serious bodily injury. Appellant is entitled to no relief as it relates to his second issue.

In Appellant's third issue, he raises a challenge to the discretionary aspects of his sentence. However, since we have reversed his finding of guilt as to the flight to avoid apprehension charge and vacated that aspect of his sentence, the entire sentencing structure has been disturbed. Therefore, we need not address Appellant's sentencing claim as he is entitled to resentencing.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/14/2015