J-A16039-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MARQUISE ALEXANDER JOHNSON | : | |
| | : | |
| Appellant | : | No. 2280 EDA 2024 |

Appeal from the Judgment of Sentence Entered August 19, 2024
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0003169-2023

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED SEPTEMBER 26, 2025**

Appellant, Marquise Alexander Johnson, appeals from the judgment of sentence entered in the Montgomery County Court of Common Pleas, following his jury trial convictions for first degree murder, criminal conspiracy, robbery, possession of an instrument of crime ("PIC"), and flight to avoid apprehension.[1]  We affirm.

In its opinion, the trial court accurately set forth the relevant facts and procedural history of this case.  (**See** Trial Court Opinion, filed 11/19/24, at 1-8).  Therefore, we have no reason to restate them.  Procedurally, we add that Appellant filed a timely notice of appeal on August 27, 2024.  On September 20, 2024, the court ordered Appellant to file a concise statement

_____

[1] 18 Pa.C.S.A. §§ 2502(a), 903(a), 3701(a), 907(a), and 5126(a), respectively.

of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on September 24, 2024.

Appellant raises the following issues for our review:

> Did the [trial] court err by failing to grant Appellant's motion for judgment of acquittal because the Commonwealth's evidence, even viewed in the light most favorable to Appellee, was insufficient to sustain convictions for conspiracy to commit first-degree murder, first-degree murder, robbery, flight to avoid apprehension and [PIC].
>
> Did the [trial] court err by not dismissing the charge for flight to avoid apprehension despite **Commonwealth v. Phillips**, 129 A.3d 513 (Pa.Super. 2015), mandating such a result.
>
> Did the [trial] court err by not permitting defense counsel to cross-examine two Commonwealth witnesses about the victim's intention to meet with another person in the window of time in which he was alleged to have been murdered when such evidence was plainly admissible under Pennsylvania Rule of Evidence 803(3) and the **Hillmon**[2] Doctrine and tended to exculpate Appellant by establishing a potential alternative suspect.
>
> Did the [trial] court err by not vacating Appellant's conviction as the result was against the weight of the evidence.

(Appellant's Brief at 4) (reordered for purpose of disposition).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable William R.

_____

[2] **Mutual Life Insurance Co. v. Hillmon**, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892).

Carpenter, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented.

Regarding Appellant's first two issues combined, the trial court determined that the Commonwealth presented sufficient circumstantial evidence to sustain all of Appellant's convictions. (**See** Trial Court Opinion at 9-20). Specifically, the court found that the Commonwealth presented sufficient evidence to establish that Appellant made an agreement with Cody Reed to kill Daquon Tucker ("Victim"), walked with Victim and Mr. Reed to a wooded trail, and participated directly or as a co-conspirator in fatally shooting Victim and stealing Victim's phone. This evidence was sufficient for the jury to convict Appellant of criminal conspiracy, first-degree murder, PIC, and robbery. Regarding Appellant's flight to avoid apprehension conviction, the Commonwealth presented evidence that Appellant left the area shortly after the shooting, stayed at several Airbnb rentals in multiple locations, and was apprehended in New Jersey approximately one month after a warrant had been issued for his arrest. The court found that this case is materially distinguishable from **Philips**, in which this Court vacated a conviction for flight to avoid apprehension because the defendant was apprehended by law enforcement prior to being charged with a crime. Here, Appellant continued to flee for a period of time **after** an arrest warrant was issued.

In regard to Appellant's third issue, the trial court explained that it did

not preclude Appellant from questioning witnesses about Victim's intention to meet another individual during the relevant time frame but merely sustained the Commonwealth's objections to hearsay. (*See* Trial Court Opinion at 22-24). The court permitted Appellant to question witnesses on the topic in a manner that did not elicit hearsay testimony. Regarding Appellant's argument that the testimony was permitted under a hearsay exception, Appellant failed to preserve this claim by asserting it on the record at trial. *See Commonwealth v. Smith*, 47 A.3d 862, 866 (Pa.Super. 2012), *appeal denied*, 619 Pa. 673, 60 A.3d 536 (2012) (holding that appellant failed to preserve application of hearsay exception for appellate review by failing to raise that specific exception before trial court).

Regarding Appellant's weight of the evidence claim, the trial court found that Appellant highlighted, during cross examination, any deficiencies in the reliability of the expert testimony regarding cell phone mapping and historical data analysis. (*See* Trial Court Opinion at 25-26). The court determined that the jury's choice to credit the expert testimony, particularly in light of the other supporting evidence presented by the Commonwealth, did not result in a denial of justice warranting a new trial. Accordingly, we affirm based on the trial court's opinion.[3]

Judgment of sentence affirmed.

_____

[3] We direct the parties to attach a copy of the trial court's opinion to any future filings involving this appeal.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>9/26/2025</u>

Circulated 08/25/2025 03:44 PM

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY
PENNSYLVANIA
CRIMINAL DIVISION**

**COMMONWEALTH OF PENNSYLVANIA:**  CP-46-CR-0003169-2023

**V.**  :

**MARQUISE ALEXANDER JOHNSON**  :  **2280 EDA 2024**

**1925(a) OPINION**

CARPENTER   J.  NOVEMBER 19, 2024

INTRODUCTION

Appellant, Marquise Alexander Johnson, appeals from his judgment of sentence imposed on August 19, 2024, following his convictions of first-degree murder, criminal conspiracy, robbery, possession of an instrument of crime with intent, and flight to avoid apprehension or punishment. He was sentenced to a life-term imprisonment.

Appellant's convictions arose out of the March 2, 2023, shooting death of Daquan Tucker on the Schuykill River Trail, West Norriton, Montgomery County. The circumstantial evidence showed that three subjects walked to the trail, and only two walked out. The following morning, the victim's body was found murdered with three shots to the head.

On that night of the murder, surveillance showed that the victim, Appellant, and co-defendant Reed, walked in the direction of the trail, and were last seen on video about 250 to 300 yards away from a trail entrance. The victim's call detail records corroborated this path of travel. Around 9:09 p.m. the victim's phone was on the trail, the same location the victim's body was

Clerk of Courts
NOV 19 '24 PM3:30

found the following morning. Despite the fact the victim remained on the trail, call detail records showed that his phone left the trail. The path of the victim's phone mirrored the path that Appellant and Reed traveled away from the trail and back to Norristown, to Reed's apartment.

When Appellant and Reed returned to Reed's apartment, their phones, which remained in the vicinity of Reed's apartment during the operative time and were dormant, became active. A short time later, Brianna Radley's, Appellant's girlfriend, vehicle picked Appellant and Reed up from Reed's apartment. All three fled the area, and Appellant and Reed were apprehended about a month later in Atlantic City, New Jersey.

The theory of the defense focused on the lack the direct evidence and challenged the credibility of the Commonwealth's witnesses to argue reasonable doubt.

On appeal, Appellant challenges, *inter alia*, the sufficiency of the evidence, various evidentiary rulings, and the weight of the evidence.

## FACTUAL AND PROCEDURAL HISTORY

A four-day jury trial began on June 3, 2024 and established the following facts. On March 3, 2023, around 9:00 a.m., Daquan Tucker's body was discovered by a passerby, down a steep embankment, next to the Schuykill River Trail. (N.T., Trial by Jury –Day 1, 6/3/24, pp. 60 – 62). Officer Anthoney DiNolfi of the West Norriton Township Police Department responded to the scene at 185 Schuykill River Trail a few minutes later. Id. at 75.

2

Detective David Schanes of the Montgomery County Detective Bureau was able to identify the victim, at the scene, using a portable fingerprint reader since no identifying information was found. Id. at 90, 110. The detective collected two fired cartridge casings, both .40 caliber. Id. at 108. He later recovered a third projectile from the autopsy. Id. at 114. All three fired cartridge casings were fired from the same firearm. Id. at 179.

Dr. Khalil Wardak performed the autopsy and determined that the cause of death was multiple gunshot wounds to the head. Id. at 156, 157, 158.

During the course of the investigation, Riley Weems, the victim's girlfriend, spoke to police and gave police critical information. (N.T., Trial by Jury – Day 2, 6/4/24, p. 8, 11- 12). Ms. Weems explained that on March 2, 2023, the victim left their house around 6:45 p.m. Id. at 13, 18. Appellant shared his location with her, through a shared "live location" on the Find my iPhone application. Id. at 20. At 8:57 p.m., Ms. Weems took a screenshot of his location, which showed that the victim was in the woods, since she thought that was strange. Id. at 23. She took another screenshot of his location around 9:00 p.m. Id. at 25. Ms. Weems was worried and called him at 9:02 p.m.; the victim answered. Id. at 24, 25, 26. He sounded happy, as if nothing was wrong. Id. at 26 – 27. She later tried calling him several other times, but he never answered. Id. at 27. At 10:06 p.m., Ms. Weems took a screenshot of the victim's location, which showed his phone was around 1000 West Airy Street. Id. at 30 – 31. Appellant's location no longer would update. Id. at 34 – 35.

3

Although, Ms. Weems testified that she did not remember certain aspects of her March 3, 2023, statement to police, the recorded statement showed that on March 2, 2023, before meeting up, the victim was on a FaceTime call with Reed. Id. at 42 – 43, 44. Ms. Weems gave Reed her address, so he could send an Uber for the victim. Id. at 42

Detective John Wittenberger of the Montgomery County Detective Bureau gathered about 24 sources of video surveillance, and made a compilation video. Id. at 79, 81. In pertinent part, video from the morning of March 2, 2023, showed Appellant, with blue Puma hooded sweatshirt with the hood up, acid wash jeans and holding his phone. Id. at 91. Reed was wearing jeans and carrying his cell phone. Id. The two men walked towards Reed's apartment and entered. Id. at 92. Around 7:11 p.m. that night, the victim arrived in the vicinity of Reed's apartment, in an Uber. Id. at 92 – 93, 94. The Uber had been ordered from an account associated with Hailey Covelens, Reed's girlfriend. Id. at 93. Appellant walked to Reeds apartment. Id. at 94.

Around 8:32 p.m., video surveillance showed that the victim, Appellant, and Reed, exited Reed's apartment building and walked westbound. Id. at 95 - 96. Additional surveillance videos showed the three men continue to walk south on Chain Street in the direction of the Schuykill River Trail. Id. at 99. The entire walk was about 1.4 miles. Id. at 102. The men went out of view about a block before the trail access point. Id. at 103. There was no surveillance video on the trail. Id.

4

Around 9:36 p.m., surveillance video picked up two subjects walking away from the trail and on a path of travel back to Norristown. Id. at 104 – 105. On the way back to Reed's residence, video at a 7-Eleven showed Appellant and Reed around the 1500 block of West Main Street at about 9:38 p.m. Id. at 105 – 106. They arrived back to Reed's apartment around 10:22 p.m. Id. at 106 – 108. At 10:54 p.m., Brianna Radley's vehicle pulled up to Reed's residence, the two men exited the residence, and got into the car. Id. at 116 – 117. The vehicle left the area. Id. at 117 – 118.

Detective Heather Long reviewed call detail records for cell phones belonging to Appellant, Reed, the victim, and Ms. Radley. (N.T., Trial by Jury – Day 3, 6/5/24, p. 43 – 47. The detective reviewed the download of Ms. Weems' phone. Id. at 47. Additionally, she corroborated the phone detail records with the clips of surveillance video testified to by Detective Wittenberger. Id. at 59, 60. On the morning of the murder around 10:59 a.m., cell site data showed that Appellant and Reed's phones were traveling together in the vicinity of Reed's apartment building. Id. at 71, 72 – 73. The surveillance video from 11:03 a.m., showed that Reed was wearing a grey jacket, grey sweatshirt, and gray baseball cap. Id. at 73. Appellant was wearing a bright blue Puma sweatshirt and lighter blue, acid wash jean, and black sneakers. Id. at 73. Handset location of Reed's phone at that same time, showed his cell phone in the vicinity of his residence from 11:03 a.m. until 8:06 p.m. Id. at 74. Cell site data also put Appellant in the vicinity of Reed's residence during this same

time period. Id. at 75, 80 - 81. Surveillance video supports that fact that they remained there during this time. Id. at 75, 80.

From about 8:38 p.m. until 10:15 pm., during the critical time period, cell site data showed Reed's phone faced the site and sector of his residence. Id. at 81. This was consistent with handset location. Id. Appellant's cell site data showed that during this same time, his cell site side and sector also faced Reed's residence. Id. at 82. However, the victim's handset records showed he left the vicinity of Reed's residence around 8:32 p.m., which was corroborated by the video which showed the victim along with Appellant and Reed, leaving Reed's apartment. Id. at 83. In fact, the victim's handset records match the path of travel of the three men in the surveillance video. Id. at 84 – 89. The men were last seen on the video around 8:40, about 250 to 300 yards from the Schuykill River Trail. Id. at 89.

The victim's handset records from 8:40 p.m. to 9:00 p.m., show movement of his cell phone, and the handset location at around that time. At 9:09 p.m., the victim's cell phone location converged with the cell location from the Find My iPhone application and the location of the victim's body the next morning. Id. at 93, 95.

By 9:20 p.m., the victim's cell phone began to travel away from where his body was found. Id. at 96. This was consistent with video surveillance of a path of travel traveled by two figures. More specifically, at 9:37 p.m., two subjects; one wearing light over dark which was consistent was Reed had been wearing earlier; and dark over light clothing, consistent what

6

Appellant had been seen in in earlier surveillance, walked in a path consistent with the victim's handset location. Id. at 99 - 100. At 9:40 p.m. the victim's cell phone traveled to West Main St. Id. at 101. This is consistent with surveillance video that showed two subjects walking in the direction of the 7- Eleven. Id. Screenshots at the 7-Eleven at 9:52 p.m., showed Appellant and Reed. Id. at 101- 104. After 10:18 p.m., the victim's cell phone stopped communicating with the network, and was last located in the vicinity of Reed's apartment. Id.

Handset records indicated that Appellant's and Reed's phones were at Reed's residence during the critical time period and there was no user initiated activity during this time period. Id. at 118 - 119, 120. However, after video showed Appellant and Reed arrive back to Reed's residence, there was user initiated activity on their phones. Id. at 122 – 123.

Ms. Radley's cell phone arrived in the vicinity of Reed's residence around 10:58 p.m. Id. at 125. Around that time, video showed that two subjects emerged from Reed's residence and entered her vehicle. Reed was carrying a white bag. Id. at 127. Thereafter, cell phone records showed the travel of all three phone away from Reed's residence. Id. at 128 – 132. There were no further records for Reed's phone after March 4th. Id. at 132. On March 6th, Ms. Radley's phone traveled to 826 Monroe Street, Stroudsburg. Id. at 133 – 134. An Airbnb house was rented by Ms. Radley on March 6th in Stroudsburg. Id. at 136 – 137. Last record from her phone was from March 7th, around 12:24 p.m., which was in close proximity or right after the police contacted her parents. Id. at 137.

7

On April 6, 2023, over 20 SWAT officers responded to 11 North Rhode Island Drive, New Jersey. (N.T., Trial by Jury – Day 2, 6/4/24, pp. 173 – 174. Appellant was barricaded in that residence and refused to surrender. Id. at 174. At some point law enforcement breached the windows and started to insert gas. Id. at 176. Eventually, Appellant was taken into custody. Id. at 178 – 179.

At the conclusion of the trial, the jury found Appellant guilty of the aforementioned charges. A timely post-sentence motion was filed, and later denied. This timely appeal followed.

## ISSUES

This Court directed Appellant to file a concise statement of errors complained of on appeal. He raised issues most efficiently detailed as follows:

I.      Motion for Judgment of Acquittal

II.     Sufficiency of the Evidence of all Convictions

III.    Identification Testimony

IV.     Cross-Examination of Detective Wittenberger

V.      Cross-Examination of Ms. Weems

VI.     Weight of the Evidence

VII.    Consciousness of Guilt

VIII.   Flight to Avoid Apprehension

8

## DISCUSSION

### I.  Motion for Judgment of Acquittal was properly denied.

First on appeal, Appellant challenges the denial of his motion for judgment of acquittal on all charges. For the following reasons, this denial was proper.

A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge. Commonwealth v. James, 297 A.3d 755, 764 (Pa.Super. 2023). Therefore, in usual circumstances, the following standard of review to sufficiency claims which arise in the context of a motion for judgment of acquittal is as follows:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim, the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

Commonwealth v. Stahl, 175 A.3d 301, 303-04 (Pa.Super. 2017) (citations omitted and formatting altered). "In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder." Commonwealth v. Fabian, 60 A.3d 146, 150-51 (Pa.Super. 2013) (citation omitted).

9

The Commonwealth need not establish guilt to a mathematical certainty, and may sustain its burden by means of wholly circumstantial evidence. "Any doubt about the defendant's guilt is to be resolved by the factfinder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." Commonwealth v. Scott, 967 A.2d 995, 998 (Pa.Super. 2009).

At the close of the Commonwealth evidence, defense counsel made a joint motion for judgment of acquittal as to all charges. (N.T., Trial by Jury – Day 3, 6/5/24, p. 207). This Court denied the motion. Id. at 211, 213.

1. Conspiracy and First-Degree Murder

Counsel argued that acquittal was proper on the conspiracy charge because the evidence was insufficient. (N.T., Trial by Jury – Day 3, 6/5/24, p. 208). Specifically, he claimed that there was no evidence of knowledge of the commission of the crime, presence at the crime scene, and no evidence of the participation in the object of the conspiracy. Id. at 209 – 210.

While there was no direct evidence of the conspiracy, there was more than sufficient circumstantial evidence to establish that Appellant conspired with Reed to murder the victim. There was sufficient evidence to establish Appellant was present at the crime scene, that he participated in the murder, and that he had knowledge of the murder.

First degree murder is a criminal homicide committed by an "intentional killing." 18 Pa.C.S.A. § 2502(a). "Intentional killing" is defined as "killing by means of poison, or by lying in wait, or by any other kind of willful,

10

deliberate and premeditated killing." 18 Pa.C.S.A. § 2502(d). The elements of first-degree murder are: (1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill. Commonwealth v. Houser, 18 A.3d 1128, 1133 (Pa. 2011). Premeditation and deliberation exist whenever the assailant possesses the conscious purpose to bring about death. The law does not require a lengthy period of premeditation; indeed, the design to kill can be formulated in a fraction of a second. Specific intent to kill as well as malice can be inferred from the use of a deadly weapon upon a vital part of the victim's body. Commonwealth v. Jordan, 65 A.3d 318, 323 (Pa. 2013) (quotation marks and citations omitted).

In order to convict a defendant of criminal conspiracy, the Commonwealth must establish that: "(1) [he] entered into an agreement to commit or aid in the commission of a crime; (2) he shared the criminal intent with that other person; and (3) an overt act was committed in furtherance of the conspiracy." Commonwealth v. Knox, 50 A.3d 749, 755 (Pa. Super. 2012) (citation omitted). "This overt act need not be committed by the defendant; it need only be committed by a co-conspirator." Id.

Our Pennsylvania Superior Court has further explained:

> As conspiracy by its nature is often difficult to prove due to the absence of direct evidence, cases examining the sufficiency of the evidence often look to the conduct of the parties and the circumstances surrounding their conduct which may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

11

> Among the circumstances that which are relevant, but
> not sufficient by themselves, to prove a [criminal]
> confederation are: (1) an association between alleged
> coconspirators; (2) knowledge of the commission of the
> crime; (3) presence at the scene of the crime; and (4) in
> some situations, participation in the object of the
> conspiracy. The presence of such circumstances may
> furnish a web of evidence linking an accursed to an
> alleged conspiracy beyond a reasonable doubt when
> viewed in conjunction with each other and in the
> context in which they occurred.
> Other circumstances which are relevant include post-
> crime conduct, such as flight, because it tends to
> establish consciousness of guilt. When combined with
> other direct or circumstantial evidence, that conduct
> may provide sufficient evidence to establish a
> conspiracy.

Jordan, 212 A.3d at 97 (quotation marks and citations omitted).

[E]vidence of identification need not be positive and certain to sustain a conviction. Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. ... Given additional evidentiary circumstances, any indefiniteness and uncertainty in the identification testimony goes to its weight. Commonwealth v. Orr, 38 A.3d 868, 874 (Pa.Super. 2011) (*en banc*).

In this case, at some point there was an agreement made, and although the Commonwealth could not pinpoint when it was made, the circumstantial evidence showed that there was in fact an agreement. Evidence established that Reed and the victim had a FaceTime call, and shortly after that call, an Uber ordered from the account belonging Reed's girlfriend, brought the victim to Norristown and to Reed's residence. About an hour and a

12

half after the victim arrived at his residence, the victim, Appellant, and Reed left Reed's apartment. The victim's cell phone traveled away from Reed's residence; however, the cell phones belonging to Appellant and Reed remained in the vicinity of Reed's apartment, and the inference that they left their phones behind.

The victim's cell site location and the handset location data showed that his phone traveled a path towards the Schuykill River Trail. Surveillance video showed three subjects walking that same path. The timing of the surveillance matched up to the victim's phone path of travel. Cell phone location data as well as information from Find My iPhone App showed that the victim's phone entered the trail and was there around 9:00 p.m. The victim never left the trail, and was found the following day with three gunshots to his head. His body was discovered in essentially the last place his of his last connected cell phone call.

Despite the victim being found on the trail, his phone traveled away from the trail a short time after it had arrived on the trail. Surveillance video showed two subjects walking away from the direction of the Schuykill River Trail, the same path of travel of the victim's cell phone when it left the trail. Appellant and Reed were seen on surveillance at 10:06 p.m., at the same time that the Find My iPhone app showed that the victim's cell phone was at that location.

The victim's phone stopped connecting to the network around 10:18 p.m., and four minutes later, Appellant and Reed walked into Reed's

13

apartment. Shortly after that, Appellant called his girlfriend. Ms. Radley's vehicle arrived at Reed's residence a short time afterwards. Appellant and Reed left Reed's apartment.

Appellant and Reed got into Ms. Radley's car, and fled the area. Appellant and Reed were found 35 days later in New Jersey in an Airbnb. During that time they rented multiple Airbnb's, changing their location. When Appellant and Reed were eventually located, Appellant refused to come out, and had to be forced out of that residence by a SWAT team.

Therefore, all of this evidence disavows counsel's argument in support of his judgment of acquittal. Circumstantial evidence showed that there was an agreement between Appellant and Reed to murder the victim, circumstantial evidence Appellant at the crime scene, circumstantial evidence showed that the victim was murdered by Appellant and Reed, and the consciousness of guilt evidence also supported the verdicts.

2. Robbery

Defense counsel made the same arguments as to first-degree murder and robbery as he did to the conspiracy charge. (N.T., Trial by Jury – Day 3, 6/5/24, p. 210. And on appeal, he argues that the evidence did not show that he or Reed took anything by force from the victim or aided the other in doing so.

A person commits robbery if, in the course of committing a theft, he inflicts serious bodily injury upon another. See 18 Pa.C.S.A. § 3701(a)(1)(i).

14

In this case, the evidence showed that the victim's phone was taken and the victim ended up dead from three gunshots to the head.

### 3. Flight to Avoid Apprehension

As to the charge of flight to avoid apprehension, defense counsel filed a motion in *limine,* and incorporated the arguments therein, including reiterating at trial that as a matter of law this charge should be dismissed because the flight occurred long before the arrest warrant was issued. N.T., Trial by Jury – Day 3, 6/5/24, p. 207).

At trial and in the motion in *limine* to dismiss this charge counsel argued that because the arrest warrant was issued after Appellant and Reed fled Appellant cannot be convicted of this crime. According to counsel, statutory construction of Section 5126(a) of the Crimes Code requires that police file charges and an arrest warrant before a defendant flees the jurisdiction. Counsel cited to Commonwealth v. Phillips, 129 A.3d 513, 518 (Pa.Super. 2015) in his written motion to support his argument.

The crime flight to avoid apprehension is defined as:

> (a) Offense defined.—A person who willfully conceals himself or moves or travels within or outside this Commonwealth with the intent to avoid apprehension, trial or punishment commits a felony of the third degree when the crime which he has been charged with or has been convicted of is a felony and commits a misdemeanor of the second degree when the crime which he has been charged with or has been convicted of is a misdemeanor.

15

18 Pa.C.S § 5126(a).

In Phillips, the Pennsylvania Superior Court addressed the issue of whether the crime of flight to avoid apprehension "applies to a person who has not yet been charged with a crime when he flees from law enforcement." Phillips, 129 A.3d at 516. Phillips fled from police after committing a series of crimes. However, at the time that he fled, no charges were pending. The Phillips Court concluded that the language of the statute unambiguously required that at the time of flight, "a person have been charged with a crime." Id. at 518. The Phillips Court vacated the conviction.

However, the facts of Phillips are distinguishable from the facts of this case, which requires a different result. In this case, like Phillips, Appellant fled before the arrest warrant; however, unlike Phillips, Appellant continued to flee after the arrest warrant and after he was aware of the warrant as proven by circumstantial evidence.

In Phillips, law enforcement responded to a report of shots fired, and were informed that the suspects were believed to be fleeing in a burgundy Buick. Phillips, 129 A.3d at 515. An officer approached the crime scene and saw a burgundy Buick pass him. Id. The officer activated his lights and attempted to pull over the vehicle. Id. Although seemingly pulling over, the Buick sped away as the officer exited his vehicle. Id. A high speed chase ensued. Id. Eventually the Buick crashed, and the driver began to flee. Ultimately the driver was subdued and was apprehended. The other occupants of the vehicle also attempted to flee, including Appellant, but were apprehended

16

shortly thereafter. Id. It was only after the subjects were apprehended that arrest warrants were issued. Based on these facts, that the fleeing only occurred prior to an arrest warrant, the Phillips Court vacated the defendant's conviction.

The facts of this case are distinguishable because not only did Appellant flee the scene prior to the arrest warrant being issued, but after the arrest warrant was issued, the fleeing continued for about a month and spanning several difference Airbnb locations in a further attempt to elude law enforcement. This showed that Appellant intended to avoid apprehension.

Detective Wittenberger testified that on March 8, 2023, arrest warrants were issued for Appellant and Reed. (N.T., Trial by Jury – Day 2, 6/4/24, 119). In an attempt to find them, the detective spoke to their respective girlfriends to find out their whereabouts. Id. He spoke to Briana Radley on March 8th, and 22nd. Id. at 120. He spoke to Hailey Covelens on March 15th. Id. at 120. They did not provide the detective with any information. Id.

In addition, Ms. Radley helped Appellant and Reed initially leave Norristown and head upstate in Pennsylvania. (N.T., Trial by Jury – Day 3, 6/5/24, 124 – 125). Ms. Radley's phone and Appellant's phone traveled together from the time of the murder through March 6th, which is the last cell site information for Appellant's phone. Id. at 134 – 136. By March 7th, cell site data showed Ms. Radley's phone to be in the vicinity of 826 Monroe Street, Stroudsburg area. After, 12:44 p.m. her phone was no longer connected to the

17

network. This was in close proximity in time or right after the police contacted Ms. Radley's parents. Id. Between March 9th and April 6th there were several Airbnb rentals all reserved from an account associated with Ms. Radley. Id. at 137 – 138, 140. The last rental was on March 31, 2023, for seven nights, at 11 North Rhode Island Avenue, Atlantic City, where Appellant and Reed were ultimately apprehended. Id. at 138.

Based upon the facts of this case which distinguish it from the Phillips case, where the flight occurred only prior to arrest warrant; Appellant and Reed continued to abscond from law enforcement after the arrest warrants were issued.

4. Possession of Firearm

At the time counsel argued his motion for judgment of acquittal, he asserted that the possessory offense of the firearm should be dismissed because someone can't be guilty of that crime as an accomplice or as a conspirator when he or she did not actually possess the firearm. (N.T., Trial by Jury – Day 3, 6/5/24, p. 208). Counsel relied on Commonwealth v. Knox. Also there was no evidence that either defendant possessed a firearm. Id. at 210.

The offense of possession of an instrument of crime requires proof of two elements: (1) that the defendant possessed an object that is an instrument of crime and (2) that the defendant had the intent to use the object for a criminal purpose. 18 Pa.C.S. § 907(a); Commonwealth v. Brockington, 230 A.3d 1209, 1213 (Pa.Super. 2020); Commonwealth v. Robertson, 874 A.2d 1200, 1208 (Pa.Super. 2005).

18

In Knox, the Pennsylvania Supreme Court granted allowance of appeal to consider the sufficiency of the evidence underlying the defendant's conviction for carrying a firearm without a license, when the defendant did not possess the firearm. Commonwealth v. Knox, 68 A.3d 323 (Pa. 2013) (order). In analyzing this claim the Knox Court emphasized accomplice liability as requiring a "focused examination," which in that case required a determination regarding whether the defendant, "acting with the intent to promote or facilitate his brother's unlicensed carrying of a concealed firearm, solicited his brother to commit such offense or aided, agreed, or attempted to aid his brother in doing." Commonwealth v. Knox, 105 A.3d 1194, 1197 (Pa. 2014).

Appellant was convicted of possession of an instrument of crime with intent – firearm, and the evidence was sufficient to prove that as an accomplice or as the possessor of the firearm, he did commit this crime. Given the facts of this case, where the victim was shot three times, we do not know whether it was Appellant or Reed, or both, that shot the victim; but the circumstantial evidence established that Appellant and/or Reed had the firearm and that Appellant and/or Reed shot the victim. Each perpetrator helped the other to possess the firearm and helped the other to use the firearm to murder the victim. A "focused examination," establishes that even as an accomplice, Appellant, acted with the intent to promote or facilitate the possession of the firearm.

II. <u>Sufficiency of the Evidence – All Convictions</u>

19

For all the reasons set forth above in support of the denial of the motion for judgment of acquittal, the evidence was sufficient to support each conviction.

III.    Testimony of Detectives Long and Wittenberger

Appellant claims on appeal that this Court erred in allowing lay witnesses, Detective Long and Detective Wittenberger, to opine that he was one of the figures in the videos presented by the Commonwealth at trial. Appellant specifically points to the testimony on day two of the trial, wherein Detective Wittenberger identified Reed in surveillance video. (N.T., Trial by Jury – Day 2, 6/4/24, p. 85.) Appellant argues that this evidence was inadmissible under Pa.R.Crim.P. 701, and that the Commonwealth witnesses lacked sufficient foundation to establish that they were familiar enough with him to identify him in a video.

At trial Detective Wittenberger explained that in the course of the investigation he gathered about 24 sources of video surveillance, from which he made a compilation video for the jury. Id. at 79, 81. The detective explained that the first video depicted Reed arriving in Norristown on March 1st, around 7:53 p.m., going to his apartment at 311 West Marshall St, Apt. 201. Id. at 83 - 84. At that same time, from a different camera angle, the video showed that Briana Radley's white car pull up in front of the Crown Chicken, and that Reed exited that car. Id. at 84, 85. Right after the Commonwealth asked, "Who's getting out of the white car there?", defense counsel objected on the grounds of

20

lack of foundation and improper lay opinion. Id. at 85. After a sidebar, that was not reported, this Court overruled the objection.

Initially this Court notes that Appellant did not object to Detective Long's testimony, therefore this issue as to Detective Long is waived. Detective Long identified Reed in a video, and no objection was made. (N.T., Trial by Jury – Day 3, 6/5/24, pp. 67 – 69). The detective also identified Appellant in a screenshot from the video, and again there was no objection. Id. at 70.

In addition as to the objection during Detective Wittenberger's testimony, defense counsel's only objected to the detective's narration that the subject in the video was Appellant. This video was not grainy or blurry in any way where the detective was offering an opinion who it might be. It was clear, and the detective merely narrated for the jury what was happening in the video.

First, Appellant contends that this testimony was inadmissible under Pa.R.E. 701. Rule 701 sets forth as follows:

Rule 701. Opinion Testimony by Lay Witnesses

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
(a) rationally based on the witness's perception;
(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

In this case, Detective Wittenberger properly testified. The detective described the images in the video and called attention to specific portions of the video, including that Reed exited Ms. Radley's vehicle. This commentary was

21

not an opinion, rather it was fact based. There is no suggestion that the figures in the video were hard to make out or somehow obfuscated, as was in later videos shows to the jury. The detective's identification of Reed was a fact, and not an opinion.

Next, Appellant contends that the Commonwealth failed to lay sufficient foundation that either witness knew or was familiar enough with Appellant such that either could identify him in a video. This claim is waived. The objection at trial, identified by counsel in this appeal, was the one in which Appellant's counsel objected to Detective Wittenberger's narration that **Reed** was exiting Ms. Radley's vehicle.

IV.    Cross-Examination of Detective Wittenberger

During cross-examination of Detective Wittenberger, counsel for Reed questioned him as to whether his investigation informed him that the victim was to meet up with someone by the name of E. (N.T., Trial by Jury – Day 2, 6/4/24, p. 137). At that point, the Commonwealth objected on basis of hearsay. Id. The objection was sustained. Id. Counsel for Appellant then requested a sidebar on the issue, which was held, but not recorded. Id. at 137 – 138. Back on the record, this Court sustained the objection. Id. at 138. Reed's counsel continued his cross-examination, and asked the detective if he knew who E was. Id. The detective denied knowing him and denied interviewing him. Id. Counsel did not continue this line of questioning.

On appeal, Appellant suggests that had the objection not been erroneously sustained, defense would have elicited testimony that the victim

22

intended to meet another individual, named E. Appellant argues that this other individual could have been the perpetrator of the murder and that law enforcement did not investigate E at all. Id.

The admission of evidence is reviewed for an abuse of discretion. Commonwealth v. Elliott, 80 A.3d 415, 446 (Pa. 2013).

The objection was properly sustained. When Reed's counsel first raised the issue of E, the Commonwealth objected on the basis of hearsay. Counsel did not set forth on the record whether he was relying on a hearsay exception or not, and although a sidebar was held it was not reported. After sustaining that objection, defense counsel resumed in questioning the detective about E. Counsel was not prohibited in raising the issue of someone named E. Reed's counsel continued his cross-examination, and asked the detective if he knew who E was. The detective denied knowing him and denied interviewing him. Therefore, counsel presumably explored other ways to bring in the evidence about E, but given Detective Wittenberger's responses he was unable to do so. Also when Appellant's counsel cross-examined the detective he did not attempt to elicit any testimony about E, again, presumably because this witness denied even knowing him. From this testimony it was evidence that Detective Wittenberger would not have been able to provide any testimony about E that was not hearsay.

V.   Cross-Examination of Riley Weems

Appellant next claims that this Court erred when it sustained the Commonwealth's objection during Ms. Weems cross-examination testimony

23

wherein defense counsel inquired about the victim's intention to meet with another individual on March 2, 2023; thereby depriving him of his constitutional right to confront his accuser.

During the cross-examination of Ms. Weems, counsel asked as follows:

Q. Okay. Now, do you know anybody named ?
A. I don't.
Q. Are you aware that he was - - that Quan was to meet with E that night?

A. I didn't know E was a person.

Q. Did he text you that he was meeting with E?

(N.T., Trial by Jury – Day 2, 6/4/24, p. 67). At this juncture, the Commonwealth objected on the basis of hearsay. Id. The objection was sustained. This Court properly sustained this question, as it would have elicited inadmissible hearsay. Counsel wasn't restricted in exploring the topic of E with the witness, only restricted in eliciting inadmissible evidence.

Finally, the Sixth Amendment to the United States Constitution provides a criminal defendant with the right "to be confronted with the witnesses against him." U.S. Const. Amend. VI. Specifically, the Supreme Court of the United States held that the Confrontation Clause protects a criminal defendant's right to confront witnesses bearing testimony against him or her. Crawford v. Washington, 541 U.S. 36, 51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). This is exactly what counsel did, he confronted Ms. Weems who was offering testimony against Appellant. Just because counsel was not permitted to introduce hearsay statements, his right to confrontation was not abrogated.

24

## VI. Weight of the Evidence

Appellant challenges the weight of the evidence by asserting that the denial of his post-sentence motion baldly asserting a weight claim was erroneous; asserting that no reasonable juror could have convicted him based upon the evidence establishing identification; and asserting that the jury gave undue weight to Detective Long's expert testimony regarding cell phone mapping and historical data analysis despite warnings from the cell phone company that law enforcement should exercise caution in using for investigative and prosecutorial purposes.

"In order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the [trial] court." Commonwealth v. Talbert, 129 A.3d 536, 545-46 (Pa.Super. 2015) (citation and internal quotation marks omitted). "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." Commonwealth v. Miller, 172 A.3d 632, 642 (Pa.Super. 2017) (citation omitted). When ruling on a weight claim, the trial court must determine whether certain facts are so clearly of greater weight that to ignore them, or to give them equal weight with all the facts, is to deny justice. Commonwealth v. Holt, 273 A.3d 514, 531-32 (Pa. 2022)

In this case, trial counsel cross-examined Detective Long and brought out the fact that the primary purpose of cell phone tracking data is for a carrier's billing and coverage. (N.T., Trial by Jury – Day 3, 6/5/24, pp. 156 –

25

157). The investigative value of this information was later realized by law enforcement. Id. at 157. Counsel also had the detective read out a cautioning note that AT&T included when it provided cell phone tracking information to law enforcement. Id. at 186. In part it read, "Please exercise caution in using these records for the investigative purposes as location data is sourced from various databases and may cause location results to be less than exact." Id. Clearly, the purpose in this cross-examination was to diminish the credibility and importance of these records. However, the jury chose to credit them. This credibility determination did not ignore evidence so clearly of greater weight that to ignore that evidence or give that evidence equal weight was to deny justice. Appellant is not entitled to a new trial on this basis.

VII.    Motion in Limine - Consciousness of Guilty Jury Instruction

Appellant contends this Court erred in charging the jury with a consciousness of guilty instruction, which was given over counsel's objection pursuant to a

On April 25, 2024, Appellant filed a motion in *limine* to preclude consciousness of guilt instruction. On May 15, 2024, a conference was held in court to resolve all pretrial matters. As to this motion in limine this Court stated that its ruling would depend on how the facts developed out at trial, and that the motion can be raised at the end of the Commonwealth's case. (N.T., 5/15/24, p. 3- 4). At the end of the second day of trial, and before the Commonwealth rested, this Court raised the issue of points for charge, and in response defense counsel stated, "Nothing additional than what I've provided

26

the Court and what we discussed pre-trial, Judge. Id. at 184 – 185. However, he did not ask for a ruling on this jury charge.

On the end of the third day of trial, the Commonwealth rested its case. (N.T., Trial by Jury – Day 3, 6/5/24, p. 207). At that time, the defense made its motion for judgment of acquittal, which was ultimately denied. Id. at 207, 213. Immediately after, this Court stated that it would proceed to final jury instructions. Id. at 213. Again, counsel did not raise the issue of this jury charge and any pre-trial request was not ruled upon.

Final instructions were given, including consciousness of guilt. Id. at 225. Defense counsel did not object. Therefore, because this Court specifically stated that the motion in *limine* to preclude the consciousness of guilt instruction could be raised later at trial, after the facts were developed and because counsel never raised the issue at any other time or object to the instruction, counsel abandoned this claim and this issue on appeal is waived.

VIII.    Motion in Limine - Flight to Avoid Apprehension

This motion to dismiss this charge was not decided at the time of the pre-trial conference, rather, this Court said that the ruling would depend on how the facts developed, and that it could be raised later. (N.T., 5/15/24, p. 4). And although counsel never raised this issue as a motion in *limine* later in the trial, he did motion for an acquittal on this charge at the end of the Commonwealth's evidence. The motion for judgment of acquittal was properly denied, as discussed earlier in this Opinion, and for the same reasons the motion in *limine* would have been denied, had it been properly preserved.

27

## CONCLUSION

Based on the forgoing analysis, Appellant's judgment of sentence imposed on August 19, 2024, should be affirmed.

**BY THE COURT:**

_____

**WILLIAM R. CARPENTER    J.**
**COURT OF COMMON PLEAS**
**MONTGOMERY COUNTY**
**PENNSYLVANIA**
**38TH JUDICIAL DISTRICT**

**Copies sent on November 19, 2024**

**By Electronic Mail to:**

Robert Falin, Esquire, Deputy District Attorney, Chief of Appellate Division;

Robert.Falin@montgomerycountypa.gov

John McCaul, Esquire; JMccaul@hrmml.com

Denise S. Vicario, Esquire, Executive Director; opinions@montgomerybar.org

**By First Class Mail to:**
Marquise Alexander Johnson #QQ6703
SCI Camp Hill
P.O. Box 8837
2500 Lisburn Road
Camp Hill, PA 17001

_____
Judicial Assistant

28